EXETER NATIONAL BANK, APPELLANT, V. WILLIAM J. ORCHARD ET AL., APPELLEES.

FILED FEBRUARY 20, 1894.    NO. 5605.

1. **Usury:** MORTGAGE FORECLOSURE: NOTES: CONSIDERATION. W. & Co., a private bank, lent money to O. upon an agreement for the payment of usury. The business was conducted between O. and W., one of the partners in the firm of W. & Co. A note was made to the order of W., and a conveyance of land, absolute in form, made to W. to secure the loan. The note was renewed at frequent intervals, usurious interest being paid upon each renewal. Some months after the loan was made the E. National Bank was incorporated and succeeded to the business and assets of W. & Co., W. becoming its cashier. The note continued to be renewed to the order of W. for some years, but finally was renewed to the order of the E. National Bank. O., at the inception of the transaction, did no. know that the money lent to him was that of W. & Co., and there was no evidence to show that

at any particular time he learned of that fact or of the fact that renewal notes belonged to the national bank until the first note was made directly to that bank. *Held*, That in an action by the national bank to foreclose the mortgage, O. was entitled to have all the payments of interest applied as payments upon the principal, and that as these payments, at the time when the first note was made directly to the bank, amounted to more than the original debt, those notes were without consideration and the bank, not being a *bona fide* holder, could not recover.

2. National Banks: Usury. It seems that the remedies given by the federal statutes for usury exacted by national banks are exclusive; but that principle does not prevent a debtor, under the circumstances stated in the foregoing paragraph, from availing himself of any defenses to which he is entitled under the state law, and which accrued before he was aware that the debt was owing to the bank.

3. Usury: Renewals of Loan: Defense. Where a loan is originally usurious, the defense of usury applies to all renewals, and when action is brought upon any note, no matter how remote, the court will apply all payments of interest upon such usurious loan as payments *pro tanto* of the principal.

4. ———: ———: Statute of Limitations. Such application is made not by way of set-off or counter-claim, but by way of payment, and the statute of limitations does not bar such a defense.

5. ———: Judgment Under Federal Statutes: Payments of Usury: Application Upon Principal: Estoppel. After the notes came to be made directly to the bank, O. brought suit against the bank and recovered judgment under the federal statutes for payments of usury made after the bank became the ostensible creditor. *Held*, That that action did not estop O. from pleading usury in the earlier transactions with W. and having those payments applied as payments upon the principal.

6. Estoppel. Nor was the making of renewal notes directly to the bank and the payment of interest thereon such a recognition of the existence of an indebtedness as would estop O. from pleading the prior usury and payment by reason thereof.

Appeal from the district court of Fillmore county. Tried below before Hastings, J.

*Charles H. Sloan*, for appellant.

*Sedgwick & Power*, contra.

Irvine, C.

The plaintiff, a national bank, instituted this action for the purpose of foreclosing an instrument which was in form of an absolute conveyance from Orchard and wife to William H. Wallace, dated October 10, 1883, and followed by a quitclaim deed from Wallace and wife to plaintiff, dated September 21, 1887. The petition contained proper averments to constitute this a mortgage, which it was alleged was given to secure the payment of a note made by Orchard to plaintiff for $500, and dated April 16, 1891. The defense pleaded was usury, and that the full amount of the principal had been paid. The pleadings aver many facts with great particularity, but there is little conflict in the evidence, and the nature of the case can best be stated by a narrative of the facts without regard to whether they are disclosed by the pleadings or evidence. In October, 1883, William H. Wallace and another were engaged in the banking business at Exeter under the name of Wallace & Co. On the day named Orchard borrowed $400 and gave his note therefor to Wallace, Orchard and wife executing the deed to secure the same. The money advanced is shown to have been that of Wallace & Co., but Orchard avers and testifies that he did not know that fact; that all his transactions were with Wallace, and that he believed Wallace to be the principal. This note was renewed from time to time; sometimes for thirty days; sometimes for sixty; once or oftener for ninety days, the renewal notes always being made to Wallace until April 10, 1889. In February, 1885, the plaintiff bank was organized and succeeded to the business and assets of Wallace & Co. April 10, 1889, upon the maturity of one of the Orchard notes, a renewal note was made to the plaintiff, and from that time on the notes were drawn to plaintiff's order. Neither the deed to Wallace, nor the quitclaim deed from Wallace to the bank, was recorded until March 12, 1892, the day this suit was

begun. November 30, 1891, Orchard began suit against the bank to recover the penalty under the federal statutes for usury exacted by the bank on several loans. In his petition he sought to recover, among other things, for payment of usurious interest made upon this loan from June, 1889, to the time he brought his action. It seems from the pleadings and from parol testimony that he did recover judgment thereon, but the judgment itself was not offered in evidence. Orchard testifies that when the $400 loan was first made, in October, 1883, the agreement was that he should pay thereon interest at the rate of two and one-fourth per cent per month; that he paid this interest for fifteen months, when another $100 was lent to him and a note made for $500, under an agreement whereby he was to pay upon that sum interest at the rate of two per cent per month. This interest he continued to pay for three years, when an agreement was made reducing the rate of interest to one and one-half per cent per month. This he paid until the first note was drawn to the order of the bank, in April, 1889. According to this testimony he must have paid upon notes drawn to the order of Wallace something over $600; so that the entire debt was discharged before the first note was made to the bank, provided Orchard's testimony is to be believed and unless some reason is shown for not applying the payments of interest made by him in discharge of the note. The trial court found for the defendants.

Much of the argument on behalf of appellant is taken up with the propositions that although a national bank has no right to lend upon real estate security, nevertheless, when it is organized to succeed a private bank, it has the right to take that bank's securities as it finds them, and enforce them against the borrowers, and further, that, as against a national bank, the remedies given for usury by the federal statutes are exclusive; that, therefore, as to usurious interest contracted for but not paid, the bank simply forfeits the

interest, and that as to usurious payments of interest an
action may be maintained to recover back double the
amount paid; but it must be a separate action for that
purpose, and payments already made cannot be pleaded as
payments upon the principal in a suit by the bank to col-
lect the principal.   In the view we take of the case all this
may be assumed as true, and yet the judgment of the trial
court was correct.   It will be remembered that, according
to Orchard's testimony, before any note had been made to
the bank, enough had been paid by way of interest to dis-
charge the debt.   There is a special finding that for a con-
siderable time before the notes were first made to the bank
Orchard was aware that they, in fact, belonged to the bank
and not to Wallace.   There is no finding, however, as to
the time when that fact was brought to Orchard's notice.
Wallace was the cashier of the bank.   The finding seems
to be based upon evidence that Orchard frequently paid the
interest by checks drawn to bearer or to the order of the
bank, and that the business was all transacted in the bank-
ing house, sometimes with other officers of the bank than
Wallace himself.   The matured notes upon their renewal
were stamped paid with the bank's stamp, but it is shown
that this stamp was used to receipt payment of instruments
held for collection only.   The notes bore numbers by
which the bank designated its own paper, but Orchard did.
not know the meaning of these numbers.   It is question-
able whether this evidence was sufficient to sustain the court's
finding as to Orchard's knowledge of the ownership of the
notes.   It is certainly insufficient to enable us to supply a
fact not found by the court—the time when Orchard
learned of the bank's ownership.   If this point is mate-
rial, the burden of proof would be upon the bank, and it
certainly has not satisfied the burden.   In reviewing the
case we cannot find that at any particular time before the
first note was drawn to the bank's order, Orchard knew
that Wallace was merely the agent of the bank.   Certainly,

until that fact became known to Orchard, he had a right to treat Wallace as the principal. Suppose, by reason of the transaction, any liability had arisen in favor of Orchard. Upon the most familiar principles Orchard might have maintained his action against Wallace, and even after the discovery of the principal he might elect either to sue the principal or the agent. Probably, on ascertaining the facts, he might have elected to treat the bank as the principal and recover from it the penalty under the federal statutes, but he was not required to so elect. Wallace and the bank had voluntarily given the transaction the form of a loan by Wallace individually, and having given it that form the bank could not be heard to say that, as against any right which Orchard might have, the real transaction was different in its nature. This certainly must be true as long as Orchard remained ignorant of the facts. Down to the time, then, when Orchard contracted directly with the bank he was entitled to all the rights which he would have had had the loan been in fact, as it was in form, a loan by Wallace. The bank, upon its organization, and in all subsequent transactions, must be presumed to have known the facts. (*Colby v. Parker*, 34 Neb., 510, and prior cases there cited.) There was no effort made to show the contrary, and it is clear that no effort to do so could have been successful. The bank, therefore, took the first note made directly to it subject to all equities. The indebtedness which it represented had been fully discharged and the note was without consideration.

The plaintiff in reply pleads that certain of the payments alleged in the answer were made more than four years prior to the commencement of the action, and that the defendant is barred by the statute of limitations from setting them up. This plea is not sound. The payments are not pleaded by way of counter-claim or set-off, but by way of payment and discharge. Where a loan is originally usurious, the defense of usury applies to all renewals thereof and

all subsequent securities, and when action is brought upon any, no matter how remote, it is subject to the plea and proof of usury, and when the proof is sufficient, the court will apply all payments of interest upon such usurious loan as payments *pro tanto* of the principal. (*Nelson v. Hurford,* 11 Neb., 465; *Knox v. Williams,* 24 Neb., 630; *Blackwell v. Wright,* 27 Neb., 269.)

The suit brought by Orchard to recover the penalty for usurious payments made subsequently to April, 1889, is pleaded as estopping the defendants from maintaining their present defense. This suit undoubtedly recognized the bank as the lender during the period of the payments for which Orchard sought to recover the penalty, and would probably estop him from pleading that the bank is not now, or has not during that period been, the owner of the notes. But Orchard did not in that action seek to recover the penalty for any period earlier than the time when he first made his note directly to the bank, and that action does not estop him from setting up any matters which he might, in an appropriate action, have set up before the period to which that suit relates. There might be some plausible reason advanced for holding, not that the suit for the penalty was a recognition of the validity of the note upon which the payments were made, but that the giving of the renewal notes to the bank, and the payments of interest thereon, were a recognition of the existence of the debt at the time these transactions began. But in usury cases no such consequences follow. The usury laws are founded upon public policy. A man may deliberately contract to pay usurious interest, may make payments as interest, giving on each occasion a new note for the full amount of the principal, and yet, under the authorities we have cited, when he is sued for the principal, the court will treat all the payments made as credits upon the principal, in spite of his deliberate contract to the contrary. Indeed, in most cases, in order to establish a defense of usury the defendant must plead and

prove that he was a party to the unlawful contract. The general principles of estoppel, for reasons of public policy and for other reasons growing out of the nature of the transactions, do not apply to usury cases.

It is, as usual, asserted that the findings of the trial court are not supported by the evidence. We have stated the purport of Orchard's testimony. It is true he does not produce checks, receipts, or books of account. He does not give with exactness dates of payments, but he avers, and it appears, that Wallace or the plaintiff kept account of the transactions. The plaintiff produces nothing to contradict Orchard's evidence. Wallace himself was upon the stand, and the only evidence in the record tending in any way to contradict Orchard comes from Wallace, and is as follows:

Q. Do you remember the rate of interest which the bank charged on this loan at any time?

A. Yes, sir.

Q. State whether or not at any time it amounted to two and one-half per cent or two and one-fourth per cent.

A. No.

It will be remembered that Orchard's testimony was that two and one-fourth per cent was only charged for a period of fifteen months after the loan was first made, and that this was during a period when everything except Wallace's testimony indicates that it was Wallace himself and not either Wallace & Co. or the bank which charged that rate. This testimony in nowise contradicts Orchard. It is less ingenuous, but discloses no greater regard for the law than Wallace's testimony at another point, where he says that because it was against the law for a national bank to loan on real estate he had made a good many loans in the way this was made, so that in case there was any trouble he could take them up. The record discloses no error, and the judgment of the trial court was as much in accordance with good law as it was with good morals.

JUDGMENT AFFIRMED.