JOSEPH A. NORRIS, APPELLEE, v. WILLIAM H. TOWER ET
AL., APPELLANTS.

FILED MAY 4, 1918. No. 20104.

1. Constitutional Law: CONTRACTS: LAWS AFFECTING. Generally
   speaking, the laws in force at the time a contract is entered into
   form a part of it and enter into its obligation, but the law then
   in force affording a remedy for a breach of the contract may be
   modified or changed without impairing the obligation of the con-
   tract, provided that an adequate remedy is left.

2. Mortgages: RIGHTS: REMEDIES. A mortgage imposes upon the
   mortgagor the obligation to pay the debt secured thereby and
   gives the mortgagee the right to sell the property mortgaged if
   he fails to do so. Either party to the contract has the right to
   a legal remedy not more prejudicial to his interest than the law
   in force when the contract was made.

APPEAL from the district court for Furnas county:
ERNEST B. PERRY, JUDGE. *Affirmed.*

*Lambe & Butler,* for appellants.

*James I. Rhea* and *J. W. James, contra.*

Prior to 1915, sales of real estate under mortgage
foreclosure proceedings required that the selling officer
should "call an inquest of two disinterested freeholders,
who shall be residents of the county where the lands
taken on execution are situated, and administer to them
an oath impartially to appraise the interest of the
person, or persons, or corporation against whom the
execution is levied, in the property so levied upon, and
such officer, together with said freeholders, shall ap-
praise said interest at its real value in money." Rev.
St. 1913, sec. 8068. It was also provided that the apprais-
ers should deduct from the real value of the lands levied
upon the amount of all prior liens and incumbrances. Sec-
tion 8069. A provision was made that certificates should
be obtained from the county clerk, the clerk of the
district court, the county treasurer, and the treasurer of

municipalities, setting forth the amount of prior liens (section 8070), and it was provided: ''In no case shall he sell any such real estate, lands, or tenements for less than two-thirds the appraised value of the interest of the person, persons, or corporation against whom the execution was issued, unless it appear from the appraisement that the liens and incumbrances thereon equal or exceed its real value in money.'' Section 8071. As to confirmation of sale, it was provided that if the court ''shall, after having carefully examined the proceedings of the officer, be satisfied that the sale has in all respects been made in conformity to the provisions of this title, the court shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, and an order that the officer make to the purchaser a deed of such lands and tenements.'' Section 8077.

In 1915 this statute was amended (Laws 1915, ch. 149) in such manner as to repeal all the provisions providing for appraisement, and the section relating to confirmation (section 3) was changed to read, as follows: ''If the court, upon the return of any writ of excution, or order of sale for the satisfaction of which any lands and tenements have been sold, shall after having carefully examined the proceedings of the officer, be satisfied *that the sale has in all respects been made in conformity to the provisions of this title and that the said property was sold for fair value, under the circumstances and conditions of the sale, or, that a subsequent sale would not realize a greater amount,* the court shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, and an order that the officer make to the purchaser a deed of such lands and tenements.''

In 1911 the defendants Tower excuted a mortgage to the plaintiff of certain lands. A decree of foreclosure was entered on June 7, 1915. In October, 1915, the land was sold under the decree under the provisions of the

act of 1915. Objections were filed to confirmation for the reason that no appraisal was had, and that the sale was not conducted under the law as it stood prior to the amendment of 1915. A hearing was had upon the return of the officer and the objections to the confirmation, upon evidence introduced in open court. The court found that the sale had been made in all respects in conformity to the law, that the property sold for a fair value, under the circumstances and conditions of the sale, and that a subsequent sale would not realize a greater amount, and the sale was confirmed. Defendant Tower appeals.

LETTON, J.

The only question presented is whether the amended statute by which appraisal is dispensed with impairs the obligation of the contract, and is, therefore, in violation of the Constitution of the state and of the United States. Generally speaking, the laws in force when a contract is entered into form a part of it and enter into its obligation. But there is a consensus of opinion that the laws giving a remedy for its breach may be modified or changed without impairing its obligation provided an adequate remedy is left. Chief Justice Marshall said: "The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct." *Sturges v. Crowninshield,* 4 Wheat. (U. S.) *122, *200.

In *Bronson v. Kinzie,* 1 How. (U. S.) *311, *315, Chief Justice Taney said: "Undoubtedly a state may regulate at pleasure the mode of proceeding in its courts in relation to past contracts as well as future, * * * and, although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will

not follow that the law is unconstitutional. Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract.'' The legislature may change the form of the remedy, provided it does not affect injuriously the rights of either party to the contract. *Oshkosh Waterworks v. Oshkosh*, 187 U. S. 437; *Architectural Decorating Co. v. National Surety Co.*, 115 Minn. 382; *United States, Cincinnati & Columbus Traction Co. v. Baltimore & O. S. W. R. Co.*, 226 U. S. 14; Black, Constitutional Prohibitions, sec. 135. The mortgage contract imposed upon the defendant the obligation to pay the debt secured thereby, and gave the creditor the right to sell the lands of the debtor if he failed to do so. It also gave the debtor the right to have this done by means of a legal remedy not more prejudicial to his interests than the statute then in force.

In most of the cases in which the question has been raised, it is the creditor who has been the complaining party, the legislators having imposed limitations or burdens upon the means provided for the collection of his debt. In an early Nebraska case, however, a debtor was the complaining party. Under the former law appraisement was required to be made, regardless of any incumbrance on the property, and the sale must be for at least two-thirds of the appraised value, while under the new act the sheriff was directed to ascertain incumbrances of record, and after deducting them to return the remainder as the real value. It was said by Lake, J.: ''This we regard as in no sense impairing the obligation of the contract, but merely as a change of the remedy or mode of enforcing the contract, which is clearly within the control of the legislature.'' *Jones v. Davis*, 6 Neb. 33.

Under the former statute affecting the sale in this case, the appraisers acted judicially, and unless their appraisal was attacked for fraud or other reason, when a sale was made for two-thirds of the appraised value

of the land, it was the duty of the court to confirm the sale. Objections to the appraisement were required to be made before the sale, and were usually supported by affidavits that the property exceeded in value the amount fixed by the appraisal. These were met by counter affidavits, and the court determined the question thus presented at the time of the confirmation. If the appraisement was not so low as to indicate fraud, a sale made at two-thirds of the appraised value was usually confirmed. A more unsatisfactory method of determining the real value of the property than by such *ex parte* affidavits could hardly have been devised. A somewhat extended experience in the district court has convinced the writer that it was often more of a contest as to the skill of those who drew the affidavits and the elasticity of conscience of those who signed them than a real inquiry as to the actual value of the land, and the rights of the debtor were apt to be injuriously affected unless great discrimination was exercised.

Under the new law it is incumbent upon the court to be satisfied that the sale has in all respects been made in conformity to the law, that the property was sold for fair value under the circumstances and conditions of the sale, or that a subsequent sale would not realize a greater amount. This substitutes a judicial investigation of value, by a court, in which witnesses may be examined and cross-examined, for the judgment of appraisers who may be selected by the sheriff, at his option, from persons living anywhere in the county, perhaps remote from the premises to be valued, or perhaps from persons living in cities or towns and unfamiliar with the price of agricultural property, or *vice versa*. We are convinced that the new act merely affects the remedy. It seems fully to guard the interests of the debtor, and does not impair the obligation of the contract or violate the Constitution of the state of Nebraska or that of the United States.

AFFIRMED.