BERWYN STATE BANK, APPELLANT, V. JOSEPH S. SWANSON
ET AL., APPELLEES.

FILED NOVEMBER 16, 1923.   No. 22500.

1.  **Bills and Notes:** RENEWALS: DEFENSES. "The taking of a new
    note for an existing note is a renewal of the old indebtedness,
    and not a payment of the debt, unless there is a specific agree-
    ment between the parties that the new note shall extinguish
    the original debt.   As between the original parties and as
    against transferees who are not *bona fide* purchasers for value,
    a renewal note is open to all defenses which might have been
    made against the original note." *Auld v. Walker*, 107 Neb. 676.

2.  **Pleading:** AMENDMENT AFTER JUDGMENT.  A pleading may be
    amended after judgment in the furtherance of justice, when the
    amendment sought does not change substantially the claim or
    defense, by conforming the pleadings to the facts proved, and
    if the evidence, adduced without objection, clearly proves the
    claim or defense, the supreme court may, on appeal, consider the
    pleading amended accordingly.

3.  **Appeal:** PLEADING: AMENDMENT. "The power of the supreme
    court to permit an amendment of a pleading to conform to the
    proof is, as a rule, only exercised to sustain a judgment, and not
    to reverse it, except where it clearly appears that a refusal to
    permit the amendment would cause a miscarriage of justice."
    *Peterson v. Lincoln County*, 92 Neb. 167.

4.  ———: ———: ———.  Evidence examined, and *held* that it
    does not clearly appear that the refusal to permit an amend-
    ment to the reply would cause a miscarriage of justice.

APPEAL from the district court for Custer county:
BRUNO O. HOSTETLER, JUDGE.  *Affirmed.*

*Kelly & Schnell* and *Sullivan, Wright & Thummel*, for
appellant.

*Sullivan, Squires & Johnson* and *Prince & Prince, contra.*

Heard before ROSE, DEAN and GOOD, JJ., REDICK, District
Judge.

GOOD, J.

Plaintiff, the holder of a promissory note for $3,750 in
which it was named as payee, brought this action thereon

against the defendants, Joseph S. and Charley A. Swanson, makers of said note.

The defendants admitted the execution of the note, and for defense alleged that it was the second renewal of a note for a like amount executed by them to the Douglas Motors Corporation; that said original note was procured from them without consideration by means of false and fraudulent representations; that after its execution said note had been fraudulently altered by inserting therein, after the name of the payee, the words "or bearer;" that said promissory note had never been properly or legally indorsed to plaintiff, and that plaintiff, when it purchased said note, had knowledge of the defenses thereto and was not a holder in due course. Plaintiff in its reply alleged that in due course and without notice it became an innocent purchaser for value before maturity of the promissory note, executed by defendants and delivered to Douglas Motors Corporation; that when said note became due defendants paid the same by paying the interest and executing a new note to plaintiff for the same amount as the original note, and that the original note was canceled and surrendered to defendants; that when said second note became due defendants paid the interest thereon in cash and executed a new note to plaintiff, as payee, for the same amount, which note is the one sued on in this action; and that by reason of such facts the defendants are estopped from setting up any defense that might have existed to said original note.

Upon a trial of the issues and after all the evidence had been taken, each of the parties moved for an instructed verdict. The court directed a verdict for the defendants' and entered judgment thereon, and plaintiff has appealed.

The record shows without dispute that in September, 1919, two men, named Moorefield and Tennant, representing themselves to be agents of the Douglas Motors Corporation for the sale of its treasury stock, by means of false and fraudulent representations induced the defendants to subscribe for 50 shares of the capital stock of said cor-

poration at $150 a share, and, in payment therefor, to execute two promissory notes, each for $3,750, payable to the Douglas Motors Corporation; that said notes were to be sent to said corporation at Omaha, Nebraska, and it was to issue and send to defendants by registered mail the 50 shares of capital stock. None of the capital stock of the corporation was ever issued and sent to the defendants. The original notes were not negotiable in form. After their execution and delivery, the words "or bearer" were inserted in said notes immediately after the name of the payee, without the knowledge or consent of the defendants. Soon after the execution of the notes, Tennant sold one of the notes to the plaintiff, and, at the time, indorsed on the back of the note the words, "Douglas Motor Co., without recourse, by C. E. Tennant, Agent." Tennant was not the agent of the Douglas Motors Corporation and was without any authority to sell, transfer or indorse any of its promissory notes, whether negotiable or otherwise. The plaintiff paid for the promissory note, when it purchased it, by giving to Tennant a certificate of deposit for $3,750, payable to the order of the Douglas Motors Corporation and due one month after the maturity of the promissory note. Plaintiff, at the time of the purchase of the note, had no knowledge of any fraud practiced upon the defendants to induce them to execute the notes, and no knowledge that the note had been altered, but was advised that the note was given in payment for stock in the Douglas Motors Corporation. Tennant and Moorefield at the time agreed with the plaintiff that the stock, when issued, should be sent to the bank and held by it as collateral security for the Swanson note, and represented that this was in pursuance of an arrangement with the defendants. Some months later, either Moorefield or Tennant procured, from some persons owning stock of the corporation, 25 shares of the capital stock of the Douglas Motors Corporation and had it transferred on the books of the corporation to the defendants, and sent the certificates to the plaintiff, which certificates, pursuant to its arrangement with Moore-

field and Tennant, were received and held by plaintiff as collateral security for the Swanson note. Some time after the plaintiff purchased the note from Tennant, it notified defendants that it held their note. The defendants at that time did not know that any fraud had been practiced upon them and did not know of the alteration of the note. Defendant Joseph S. Swanson testified that sometime before the maturity of the note he had a conversation with Fox, cashier of plaintiff; that Fox wanted to know if the note was all right, and that he told Fox, "If this is a fair and straight deal on the part of the company and the parties that sold it to me, the note would be honored;" that at a later date and before the maturity of the note he had another conversation with Fox, in which he said to Fox, "There seems to be some suspicion about this note. The company has never yet recognized, themselves recognized, this purchase," and that Fox said, "There was something that didn't look just right to him about it;" that, "if it wasn't, why he was in a position to protect me, being he had not yet paid the obligation. And I told him, 'I will depend on that,' and I thanked him." He further testified that when the note became due Fox came out to see him on his farm and brought the papers to be fixed up; that at that time he had not made any investigation as to the condition of the Douglas Motors Corporation, and that he so told Mr. Fox; that Fox said "it would be all right, and that it would be just the same—he said he was just coming out through the country and had to go out through there anyway, and he thought he would bring these papers along and get them in shape so as to make a better showing for the bank department, as he was expecting the bank examiner, and he said it was only for that;" and that defendants at that time signed the renewal note.

Defendants testified that they never authorized any one to pledge the stock they had purchased as collateral security for their note, had never authorized any one to send it to plaintiff for them, and had no knowledge until after

the execution of the note sued on that any stock had been sent to plaintiff for them. Fox, the cashier, testified that within a month after the purchase of the note he wrote to the defendants, informing them that he had purchased the note; that he did not remember to have talked with defendants until after the note was due; that Joseph S. Swanson then said "he didn't know whether there was anything wrong with the purchase that he had made, or not, and I told him that I had not paid the time certificate of deposit yet, that it would be due in about 30 days, and I would try and protect him if he would get me any evidence within 30 days, before I paid the time certificate," and that the defendants did not, within the 30 days or before he had paid the time certificate, give him any information as to any defense to the note.

Plaintiff now concedes that, because there was never any proper indorsement of the note which it purchased from Tennant, it was not the holder thereof in due course, but it contends that by twice renewing the note the defendants have waived the defense to the original note, and, by reason of the fact that the bank had changed its position in reliance upon the renewal, the defendants are estopped from denying liability. In support of this contention, plaintiff cites decisions from the courts of other jurisdictions. The authorities cited and relied upon apparently do hold that one who renews a note, with knowledge of facts that would constitute a defense, or, by the exercise of ordinary diligence, could have discovered the facts and ascertained his rights, waives such defense, and especially if his conduct has misled the holder of the note to his prejudice. But, whatever the rule may be in other jurisdictions, it is well settled in this state that—"The taking of a new note for an existing note is a renewal of the old indebtedness, and not a payment of the debt, unless there is a specific agreement between the parties that the new note shall extinguish the original debt. As between the original parties and as against transferees who are not *bona fide* purchasers for value, a renewal note is open to all defenses

which might have been made against the original note."
*Auld v. Walker,* 107 Neb. 676. Other decisions of this court
to the same effect are *Davis v. Thomas,* 66 Neb. 26, and
*Exeter Nat. Bank v. Orchard,* 39 Neb. 485. The record
does not show any agreement by the parties that the giving
of the new note should extinguish the original debt.

Plaintiff now insists that defendants are estopped from
setting up any defense they might have had to the orig-
inal note, because plaintiff has changed its position to its
detriment by reason of defendants' failure to inform plain-
tiff of such defense prior to the time it paid the certifi-
cate of deposit, which it issued as the purchase price of
the original note. While plaintiff did not plead this fact
as an estoppel in its reply, it now asks leave in this court
to amend its reply by inserting appropriate allegations set-
ting forth the facts constituting the estoppel. To this the
defendants strenuously object. The statute authorizes a
pleading to be amended, before or after judgment, when
the amendment does not substantially change the claim
or defense, by conforming the pleadings to the facts proved.
If the evidence, admitted without objection, clearly proves
a claim or defense, the pleading will, upon appeal, be con-
sidered amended accordingly. *Allertz v. Hankins,* 102 Neb.
202.

This court held in the case of *Peterson v. Lincoln County,*
92 Neb. 167: "The power of the supreme court to permit
an amendment of a pleading to conform to the proof is, as
a rule, only exercised to sustain a judgment, and not to
reverse it, except where it clearly appears that a refusal
to permit the amendment would cause a miscarriage of jus-
tice."

The record discloses that both parties proceeded in the
district court as though the issue, sought to be tendered
by the proposed amendment, was, in fact, presented by the
pleadings. Under these circumstances, if it clearly ap-
peared that a refusal to permit the amendment requested
by plaintiff would cause a miscarriage of justice, we would
feel constrained, under the rule announced in the case last

cited, to permit the amendment. As we view the record, however, it does not present any such situation. If the amendment were permitted, it would avail plaintiff nothing for two reasons: First, the evidence is in conflict upon the question as to whether the defendants knew when the certificate of deposit would be due or when it would be paid, and a determination of that question by the trial court upon conflicting evidence will not be disturbed by this court. The other reason is that the evidence shows that the certificate of deposit, issued by plaintiff in payment of the original note, was a negotiable instrument, and plaintiff failed to show that, at the time of the conversation with the defendants when the original note became due, the certificate of deposit was then in the possession of the payee thereof. For all that appears in the record, the certificate of deposit may at that time have been the property of an innocent holder for value in due course, in which case plaintiff could not have successfully resisted its payment. It does not appear that plaintiff at that time would have been able to protect itself by resisting payment of the certificate of deposit; and it follows that it does not appear that plaintiff changed its position to its detriment.

The judgment of the district court seems to be supported by the evidence and to be in conformity with the law, and is

AFFIRMED.