SARAH METTLEN, APPELLEE, V. GEORGE E. SANDOZ ET AL., APPELLANTS.

FILED OCTOBER 9, 1936. No. 29710.

626

*J. E. Porter,* for appellants.

*E. H. Boyd* and *W. R. Metz, contra.*

Heard before GOSS, C. J., GOOD, DAY, PAINE and CARTER, JJ., and BLACKLEDGE and LANDIS, District Judges.

LANDIS, District Judge.

In this suit instituted by Sarah Mettlen as plaintiff, there was sought foreclosure of the security for certain indebted-

ness of the defendants George E. Sandoz and Helen Sandoz, his wife.

Defendants interposed the defense of recoupment or reduction against the indebtedness representing the purchase price, based upon representations as to certain water and irrigation rights as appurtenant to the land, which were relied upon and failed.

Plaintiff joins issue and pleads the statute of limitations, estoppel and laches against the claim of recoupment by defendants.

The court awarded decree of foreclosure and found "generally in favor of the plaintiff and against the defendants, and that said defendants are not entitled to recover any damages from the plaintiff by reason of the allegations contained in that portion of their amended answer constituting a cross-petition, and that said defendants are not entitled to have any amount set off against or allowed as a recoupment upon the amounts herein found due to plaintiff."

Defendants' motion for new trial was overruled, supersedeas bond given and appeal made to this court, wherein defendants are appellants and plaintiff appellee.

No special findings were asked or made. The general finding for the appellee would indicate that the trial court found the ultimate facts established by the evidence and which were determinative of the judgment as sustaining appellee on the issues of statute of limitations, estoppel and laches.

Our court announced the rule in *Kaup v. Schinstock,* 88 Neb. 95, 129 N. W. 184: "Persons induced by fraud to purchase and agree to pay for real estate may, if they act promptly after discovering the facts, rescind the contract or may retain the land and, within the time limited by statute, maintain an action against the vendors for damages, or, whenever sued by their vendors to recover the price for which the land was sold, may plead such damages by way of recoupment." That was a suit by vendees to cancel purchase-price notes and mortgage for fraud. The vendors prevailed because of the statute of limitations, the vendees having failed to act within the time limited by law.

However, the court held that the vendees had a further right to recoup their damages should an action be commenced upon the notes or to foreclose the mortgage. It was said in the opinion: "This action is primarily one to recover damages, and should have been commenced within four years of the time the plaintiffs (vendees) discovered the facts. Having failed to act within the time limited by law, the plaintiffs must wait until an attempt is made to foreclose the mortgage or recover upon the notes." While the judgment of the district court for the plaintiffs. (vendees) was reversed by this court, it was with directions to dismiss the action without prejudice to the plaintiffs' defense of recoupment in any action prosecuted upon the notes or mortgage described in the action.

The defense of reduction or recoupment which arises out of the same transaction as the claim, which is true in the. instant case, survives as long as the cause of action upon the claim exists, although an affirmative action upon the. subject may be barred by the statute of limitations.

In the instant case it would be error to hold that the statute of limitations was a bar to appellants claim of recoupment.

Appellants renewed the original note and mortgage, and appellee claims, in effect, this creates an estoppel and waiver. "The taking of a new note for an existing note is a renewal of the old indebtedness, and not a payment of the debt, unless there is a specific agreement between the parties that the new note shall extinguish the original debt. As between the original parties and as against transferees who are not *bona fide* purchasers for value, a renewal note is open to all defenses which might have been made against. the original note." *Auld v. Walker*, 107 Neb. 676, 186 N. W. 1008. Other decisions of this court to the same effect are *Davis v. Thomas*, 66 Neb. 26, 92 N. W. 187; *Exeter Nat. Bank v. Orchard*, 39 Neb. 485, 58 N. W. 144; *Exchange Nat. Bank v. Schultz*, 113 Neb. 346, 203 N. W. 496; *Berwyn State Bank v. Swanson*, 111 Neb. 141, 196 N. W. 125; *Willis v.. Sponsler*, 117 Neb. 1, 219 N. W. 581.

A critical examination of the record fails to show any agreement by the parties that the giving of the new note should extinguish the original debt. It would be error in this case to hold that the renewal of the original note by appellants constituted any waiver or estoppel without such evidence.

Considering appellee's claim of laches which the general finding for her might be inferred to have sustained, we reach a different conclusion.

Appellants rely on recoupment and reduction against the purchase price indebtedness and mortgage. This defense would not be available to appellants until the appellee declared upon such. Appellee instituted this suit November 17, 1932, and then for the first time the defense of recoupment and reduction could be asserted by appellants, which was done by answer. It would be inconsistent to grant a right of recoupment and when it is asserted at the first available opportunity apply the doctrine of laches, even though such might apply to some other remedy open to appellants and not claimed.

Upon the trial *de novo* here, we must determine whether the finding against the appellants in the trial court upon the merits of their claim for recoupment and reduction is warranted.

The evidence in the record shows Jackson Mettlen and appellee, his wife, in 1918 owned a tract of land located on the Niobrara river in Sioux county, Nebraska. Part of this tract stood in the name of appellee. A portion was irrigable land, subject to a completed irrigation project known as "Mettlen's Canal" allowed by the state as docket 292. Application docket 292 was filed April 27, 1896, which is the date of priority.

George E. Sandoz entered into negotiations with the Mettlens in 1918 to purchase the tract of about 840 acres and a school section under lease. Only evidence of such as was made in presence of appellee was offered. It was represented to Sandoz, appellant, as to appurtenant water rights to the land, that all of the land under the ditch up to

the east section line of three had been irrigated; that there was a right dating back to 1896 to irrigate all of the land under the ditch, amounting to 130 acres, and that the ditch was entitled to 10 cubic feet of water, which means, in irrigation terms, an amount of 10 second-feet of water.

Relying upon these representations as to appurtenant irrigation rights, Sandoz bought the tract on a basis of $110 an acre for the 130 acres under the ditch; the remainder, not subject to irrigation, at $5 and $10 an acre; school land lease $500.

The purchase was consummated April 9, 1918, and as part thereof a mortgage on the tract was assumed; later this was paid from the proceeds of a loan negotiated by Sandoz through the Federal Land Bank of Omaha, which became a first mortgage, and the $10,000 purchase price mortgage upon which had been paid $2,000 at this time was renewed for $8,000. This mortgage was executed by Sandoz and wife, appellants, to Sarah Mettlen, appellee. On this mortgage appellants paid $500 in April, 1929, and $500 October 31, 1929, and some interest, thus reducing the principal on the purchase price indebtedness to $7,000.

Sandoz permitted the interest on the Federal Land Bank mortgage to become delinquent, as well as taxes and the interest on the balance of the $7,000 mortgage. Appellee, to protect her mortgage, paid the taxes, payments as they became due on the Federal Land Bank loan, and on November 17, 1932, started the instant action to foreclose.

Sandoz found the irrigation system in working order when he took possession in 1918 and continued to irrigate practically all the lands lying between the canal and river until 1931. A complete copy of the file of the department of public works of the state with reference to reports, and correspondence made by Mettlen and Sandoz, and the replies thereto, is in evidence by consent of the parties. Sandoz did not definitely know or fully appreciate until 1931, when the state finally stopped him from irrigating more than 56 acres of his land, that he was not entitled to water as represented for the 130 acres.

The file shows that in 1923 Sandoz had some controversies with the department of irrigation as to the irrigated acreage reported by him, but he continued to irrigate his whole 130 acres.

In 1921 the department returned a report made by Sandoz and he took it up with appellee and her husband, and they informed him that "the department often made mistakes and that there was nothing wrong with the appropriation." Sandoz made annual reports to the department for the year 1924 to 1930, inclusive. The department appears to have acquiesced until 1931, when Sandoz was actually and finally stopped from irrigating any except 56 acres. Sandoz then went to appellee, who told him he "better get it fixed up because the place wasn't worth much without irrigation," and also advised Sandoz to get a lawyer and put in an application to get it reinstated and she would help.

Appellee furnished Sandoz with an affidavit for the hearing before the department, in which she testified that she resided on said lands as long as they owned the same, and sold said lands to George E. Sandoz; that the irrigation district was formed and the Mettlen canal constructed during the time of her residence on the land; that said lands were irrigated from the Niobrara river and through the Mettlen canal during all of the time after its construction and while she was living on the land; that all of said 130 acres was irrigated, at least to the extent it was possible; that it was the intention to irrigate all of said land under the ditch at the time our application was made.

Sandoz secured an attorney and filed an application with the department to have appropriation No. 292 reformed. The hearing resulted in a rejection of the requested reformation to include the additional acreage, but allowed to Sandoz 56½ acres with a reduced amount of water to 4.9 second-feet. Appellee was notified by Sandoz of the adverse decision and thereafter he refused to pay her any more on the indebtedness.

This land deprived of water gradually becomes of little value and the record fully sustains the contention of ap-

pellants that there should be some recoupment or reduction of the balance of the purchase-price mortgage for the land represented as irrigated, bought as such and not obtained. The evidence is not clear as to what damage, if any, because of failure to obtain 10 second-feet of water as represented and actually being allowed 4.9 second-feet finally on the 56½ acres.

After an examination of the evidence *de novo,* we have come to the conclusion that the decree of the trial court cannot be sustained. The judgment is therefore reversed and the cause is remanded, with directions for the trial court to determine the amount of the recoupment and to enter a decree of foreclosure on the mortgage for the amount due appellee in excess thereof.

REVERSED.