IN RE ESTATE OF ROY MARSH, DECEASED.
WILLA JAYCOX BUCKLES ET AL., APPELLEES, V.
ESTHER APLEY ET AL., APPELLANTS,
BLUE VALLEY LUTHERAN HOMES SOCIETY, INC.,
A NEBRASKA NONPROFIT CORPORATION,
INTERVENOR-APPELLANT.
342 N.W.2d 373

Filed January 6, 1984. No. 82-800.

Michael L. Jeffrey of Jeffrey, Jeffrey, Hahn & Hemmerling, P.C., and William C. Waller, Jr., and Denis H. Mark of Wagner & Waller, P.C., for appellants.

David E. Cording, for intervenor.

Joseph Ginsburg of Ginsburg, Rosenberg, Ginsburg, Cathcart, Curry & Gordon, for appellees Buckles.

BOSLAUGH, HASTINGS, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

This is an appeal taken by the contestants, the testator's heirs at law, and the intervenor, Blue Valley Lutheran Homes Society, Inc., from the judgment of the district court which, applying special jury findings, declared portions of a will of Roy Marsh, deceased, invalid as being the result of undue influence exercised by Peggy Sweetser, one of the proponents-appellees. That court held the remaining portions thereof valid. Another beneficiary under said will, Willa Buckles, is the remaining proponent-appellee. For the reasons discussed hereinafter we find the entire will invalid, and therefore reverse the trial court's judgment and remand the case for further proceedings not inconsistent with this opinion.

The facts, though somewhat complex, are not in serious dispute. In the early 1950s the decedent, a

lifelong bachelor and Thayer County farmer, estranged himself from his brother and sister due to a dispute, the details of which are unimportant to this case. That estrangement continued until Marsh's death on November 6, 1980, and is evidenced by the provisions in every testamentary document Marsh executed since the 1950s, each of which contains a specific statement that his family was to receive none of his estate.

In the early 1950s Marsh became acquainted with Willa Buckles, née Jaycox, then a high school student and waitress at a Hebron, Nebraska, cafe. In a 1953 will Marsh provided that she receive a $5,000 devise. After she married, Marsh provided the couple with the use of a quarter section of farmland. Codicils to Marsh's 1953 will, executed in 1966 and 1969, provided that the Buckleses receive over 1,000 acres of Marsh's farmland, and Willa's cash devise was increased to $10,000. This 1953 will devised the residue of the estate, after distribution of specific bequests, to the city of Hebron.

On January 7, 1970, Marsh entered into an agreement with Blue Valley, a nursing care home, whereby in return for devising to Blue Valley a quarter section of land, Blue Valley would provide Marsh with living accommodations for the rest of his life. Marsh was then 73 years old. The agreement also provided that if Marsh, during his lifetime or the estate after his death, transferred property to Blue Valley valued at more than $300,000, Blue Valley's new nursing facility would be designated as the "Roy Marsh Memorial Home."

On the same day, Marsh executed a new will. This 1970 will devised a quarter section of land to Blue Valley, as their agreement provided. The specific devises of money remained the same, including the $10,000 devise to Willa Buckles. The land devised to the Buckleses remained the same, but, in addition, they were also to receive all of Marsh's farming equipment and machinery. This will elimi-

nated the city of Hebron as a beneficiary and provided that the first $250,000 of the residue of Marsh's estate, after the payment of the specific devises and expenses, go to Blue Valley, and the remainder be divided equally between Blue Valley and the Buckleses.

In 1972 Marsh moved into the Blue Valley home and there met Peggy Sweetser, a nurse's aide and, later, a licensed practical nurse. Sweetser initially endeared herself to Marsh by preparing him a bowl of potato salad, and soon thereafter entered into the group of persons who were the objects of Marsh's generosity. Prior to his death, Marsh gave Sweetser a car, the free use of a house, a salary for minimal duties, and other gifts. After Marsh's death Sweetser became the owner of bank deposits and mutual funds in the amount of $130,000, upon which she had been named either joint owner or death beneficiary. Both the Buckleses and Blue Valley received substantial gifts from Marsh as well.

On January 28, 1974, Marsh and Blue Valley modified their 1970 agreement and provided that when Marsh transferred an additional $60,000 in cash and promissory notes to Blue Valley, Blue Valley would promptly affix a plaque to its new nursing facility, with the inscription "Roy Marsh Memorial Building."

By early 1975 Marsh had performed his obligation under this agreement. In August of 1975 Marsh executed a codicil to the 1970 will, leaving Sweetser his home and a quarter section of land. On August 10, 1977, while in the hospital, Marsh executed a new will. This will eliminated the 1970 cash devises, except for the $10,000 devise to Willa Buckles and one to a Hebron church. The rest of the specific non-cash devises of the 1970 will and the 1975 codicil were left unchanged. Under the August 1977 will the residual devise to Blue Valley was reduced from $250,000 to $25,000, with the remainder of the residual estate to be divided between the Buckleses and

Sweetser. In November of 1977, after Marsh left the hospital, a new will was executed with nearly identical provisions as the August 1977 will, except that an automobile was given to Sweetser and the following statement was inserted: "In making this my Last Will and Testament, I have made Willa Jacox [sic] Buckles and Peggy Sweetser my principal beneficiaries. I do this after giving the matter careful consideration and in appreciation of the many many things they have done for me. I have never had a family and I think of these two young ladies as I would my own daughters had I been blessed with any."

In April of 1978 Marsh executed a codicil to the November 1977 will, naming Willa Buckles and Sweetser as his personal representatives. In April of 1980 Marsh executed a codicil providing for contingent beneficiaries should the primary beneficiaries predecease him.

While the record is not entirely clear on the matter, it appears that the November 1977 will, including its later codicils, was found by the county court for Thayer County to be Marsh's valid last will. That decision was appealed to the district court wherein Willa Buckles and Sweetser became the proponents of that will and Marsh's heirs at law became the contestants. Blue Valley filed a petition in intervention which took the same position as that taken by the heirs in attacking the 1977 will as being the product of undue influence.

Trial was had to a jury which, by special verdict, found that both codicils to the 1977 will, in their entirety, and the devises to Sweetser, both specific and residual, of that will were the products of Sweetser's undue influence upon Marsh. The trial judge reserved for himself the question of the validity of the remaining portions of that will. He ruled that the November 1977 will, less the tainted provisions, was the valid last will of Marsh, and certified that result to the county court.

The dispositive assignment of error made by Blue Valley and Marsh's heirs at law is the assertion that the district court erred in ruling that the 1977 will was only partially invalid.

We note that Sweetser has not filed a brief in this court and that none of the parties attack the jury's finding that certain portions of the 1977 will and each of its codicils were the product of Sweetser's undue influence on Marsh.

The parties are in disagreement as to the appropriate standard of review in this court of the trial court's determination that the 1977 will was only partially invalid. Blue Valley and the heirs contend that the finding is one of law and, thus, the district court's finding is no restraint on our inquiry into its propriety on appeal, as we must make our own determination of legal matters. See *Elrod v. Prairie Valley*, 214 Neb. 697, 335 N.W.2d 317 (1983). The Buckleses, on the other hand, contend that the ruling determined a question of fact and, thus, we are bound by the trial court's finding unless it is not supported by sufficient evidence. *Minor v. Bickford*, 195 Neb. 402, 238 N.W.2d 243 (1976). No one claims that the trial judge invaded the jury's province by taking upon himself the decision of whether the 1977 will, less the devises and codicils found by the jury to be the product of undue influence, was valid.

The procedure employed by the trial judge has been implicitly approved by us in *Spinar v. Wall*, 191 Neb. 395, 215 N.W.2d 98 (1974), and *In re Estate of George*, 144 Neb. 887, 15 N.W.2d 80 (1944). However, we have been directed to no case, and we find none, which specifically and directly holds that the issue of partial or total invalidity of a will containing void provisions is a question for the court. For the answer to this question we look at the rule of partial invalidity as adopted in Nebraska. *In re Estate of George* states at 898, 15 N.W.2d at 87: " 'The general rule that, where a part of a will is invalid, the valid bequests should be sustained, has its limita-

tions; and when the rule will defeat the testator's intent, and interfere with the general scheme of distribution, or work an injustice to other heirs, it should not be applied.' '' We now hold that whether a will which is only partially valid should be given any dispositive effect presents a question which is equitable in nature, a matter for the court. The standard of review in such a case is thus a hybrid one. The findings that certain portions of a testamentary document are the products of undue influence are determinations of fact. As such, the standard of review is whether the findings are supported by sufficient evidence, which are not to be disturbed unless clearly wrong. *Jameson v. Giacalone*, 215 Neb. 33, 337 N.W.2d 120 (1983); *In re Estate of Bouma*, 206 Neb. 209, 292 N.W.2d 37 (1980). The finding that a partially valid testamentary document is or is not to be given dispositive effect is equitable in nature and, on appeal, reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, this court will consider the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Burton v. Annett*, 215 Neb. 788, 341 N.W.2d 318 (1983).

Our de novo review, conducted in accordance with the foregoing rule, leads us to the conclusion that the November 1977 will, less the provisions which are the product of Sweetser's undue influence, should not be upheld.

It is apparent that, since 1953, Marsh desired that the bulk of the residue of his estate be used for some public, charitable purpose. His 1953 will provided that the city of Hebron, after satisfaction of that will's specific devises, was to receive the residue of his estate. By his 1970 will a large portion of his estate was to go to Blue Valley. It is only after the influence of Sweetser began to work on Marsh that these charitable devises were reduced in Marsh's wills. In the November 1977 will, instead of Blue

Valley receiving the first $250,000 and half of the remainder of the residue of Marsh's estate, as provided under the 1970 will, Blue Valley was to receive only $25,000 of the residue, and the Buckleses and Sweetser were to receive the remainder. Since the residual provision for Sweetser was declared invalid, it appears, though we do not decide, that the Buckleses would receive the entire residue after the $25,000 devise to Blue Valley. See Neb. Rev. Stat. § 30-2344 (Reissue 1979), which provides that, with certain exceptions, if a devise other than a residuary one fails for any reason, it becomes part of the residue. If § 30-2344 would not apply, it appears that Marsh's estate would be subject to a partial intestacy and that portion would pass to his heirs, Marsh's manifestly adamant wishes to the contrary notwithstanding. See Neb. Rev. Stat. § 30-2301 (Reissue 1979), which provides that any part of an estate not effectively disposed of by will passes to the testator's heirs.

Neither alternative fulfills Marsh's intent, absent the undue influence, as either would violate the general scheme of distribution he has embraced since the early 1950s. As such, the November 1977 will fails completely and is of no force or effect. See *O'Brion, Appellant*, 120 Me. 434, 115 A. 169 (1921).

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.