IN RE ESTATE OF MYRTLE MASSIE, DECEASED.
JOSEPH F. MASSIE, PERSONAL REPRESENTATIVE OF THE ESTATE OF MYRTLE MASSIE, APPELLANT, V. GIFFORD E. MASSIE, APPELLEE.
353 N.W.2d 735

Filed July 27, 1984.   No. 83-438.

Steven O. Stumpff of Stumpff & Washburn, for appellant.

John O. Sennett of Black & Sennett, for appellee.

KRIVOSHA, C.J., and CAPORALE, J., and McCOWN and BRODKEY, JJ., Retired, and RONIN, D.J., Retired.

PER CURIAM.

This is an appeal in a probate action from the district court for Custer County, Nebraska. On appeal from the county court the district court affirmed the county court's order, with the exception that the "claim" of the appellee, Gifford E. Massie, was reduced from $43,106.50 to $40,142.80. Joseph F. Massie, as personal representative of the estate of Myrtle Massie, appeals.

We review the case, as did the district court, for error appearing on the record. See, Neb. Rev. Stat. § 30-1601 (Cum. Supp. 1982); Neb. Rev. Stat. § 24-541.06 (Cum. Supp. 1982).

Myrtle Massie died intestate on July 8, 1980. On May 29, 1981, Gifford Massie filed a timely claim against the estate in the amount of $40,142.80. Subsequently, the estate filed a notice of disallowance of the claim and a counterclaim against Gifford for over $175,000. In response to the disallowance and counterclaim, Gifford filed a protest of disallowance, an answer, and a setoff. After a hearing the county court held, among other things, that the estate owed Gifford $129,549.37 and that

Gifford owed the estate $86,442.52, for a net balance in favor of Gifford in the amount of $43,106.50. On appeal the district court affirmed the county court but reduced the net balance due to Gifford to $40,142.80, ostensibly on the fact that Gifford could not receive more money from the estate than was specified in his original claim.

In one of its six assignments of error, the estate contends that because a portion of its counterclaim was based on a constructive trust theory and/or conversion, the county court was without jurisdiction to try the counterclaim. In its counterclaim the estate alleged that Gifford, who had been tending to his mother's affairs while she was residing at a rest home, had converted proceeds of the estate from various sales of cattle and grain, and proceeds of the estate from various other sources, to his own. In essence, the estate asked that these proceeds be returned.

In *In re Estate of Layton*, 207 Neb. 646, 300 N.W.2d 802 (1981), we stated that "[c]ounty courts, in exercising exclusive original jurisdiction over estates, may apply equitable principles to matters within probate jurisdiction." (Syllabus of the court.) See, also, *In re Estate of Jurgensmeier*, 142 Neb. 188, 5 N.W.2d 233 (1942).

One cannot doubt that whether or not Gifford Massie converted proceeds of the estate related to the "decedent's estate" within the meaning of Neb. Rev. Stat. § 24-517(1) (Reissue 1979), the estate chose to file its counterclaim in county court; consequently, we need not decide the issue of whether the district court would have had concurrent jurisdiction in that portion of the counterclaim dealing with equitable remedies.

The estate contends that upon appeal to the district court it should have been afforded a trial by jury. We believe not.

At the time the probate proceedings were commenced, Neb. Rev. Stat. § 30-1606 (Reissue 1979) provided that a personal representative of an estate could obtain a jury trial on the allowance of a claim in an appeal to the district court. In 1981 Neb. Laws, L.B. 42, § 30-1606 was repealed and Neb. Rev. Stat. § 30-2488 (Reissue 1979) was amended. L.B. 42, codified in part in Neb. Rev. Stat. § 30-2488 (Cum. Supp. 1982), provides that a personal representative has 14 days after a claimant files his petition for allowance in which to transfer the claim to dis-

trict court. The district court would then adjudicate the claim in the manner provided in Neb. Rev. Stat. § 25-1104 (Reissue 1979) as to actions for the recovery of money or of specific real or personal property. A jury trial is allowed. If not transferred to the district court, the claim would be heard in county court without a jury and then, if appealed, heard upon the record by the district court. L.B. 42 was passed without a saving clause and became effective August 30, 1981. Gifford Massie's protest of the disallowance of his claim was filed September 18, 1981, 19 days after the effective date of L.B. 42.

In *Lindgren v. School Dist. of Bridgeport*, 170 Neb. 279, 283-84, 102 N.W.2d 599, 604 (1960), we stated:

"A litigant has no vested right in the mode of procedure, and an action commenced before an enactment changing the procedure in the court where the action is pending, after the enactment becomes effective, is properly triable under the changed method." See, also, Norris v. Tower, 102 Neb. 434, 167 N.W. 728; Department of Banking v. Hedges, 136 Neb. 382, 286 N.W. 277; Krepcik v. Interstate Transit Lines, 151 Neb. 663, 38 N.W.2d 533.

There is no constitutional right to a trial by jury in appeals from the county court to the district court in probate proceedings. By necessity, then, the right to a trial by jury in probate proceedings must be conferred by statute. See *In re Estate of Hagan*, 143 Neb. 459, 9 N.W.2d 794 (1943). Section 30-2488 (Cum. Supp. 1982), which was in effect when Gifford filed his protest of disallowance, gave the estate 14 days in which to transfer the case to the district court for a jury trial. The estate, not having complied with requisite steps for obtaining a jury trial, cannot now be heard to complain of the procedural changes.

We next decide the issues surrounding Gifford's claim against the estate. On May 29, 1981, Gifford filed a claim for $40,142.80. Following the estate's motion and the county court's order, Gifford filed the following itemization specifying the details of his claim: (1) Drug and doctor bills - $1,261.05; (2) Insurance - $951.49; (3) Taxes - $2,181.28; (4) Rest home care - $21,022.76; (5) Landlord's share of expenses - $3,600.75; (6) Income tax work - $1,722; (7) Co-op fertilizer bill - $1,503.86;

(8) Funeral home - $2,505.11; (9) Real estate taxes - $7,433.83. The total of this itemized claim was $42,182.13.

Pursuant to a pretrial stipulation, the parties agreed that all items and their corresponding amounts were proper, with the exception of No. 3, the personal property tax on the cattle, which "should be adjusted to reflect actual ownership of the cattle"; No. 9, real estate taxes, which were "subject to the possible reduction . . . by any penalty and interest, which the Estate claims must be paid by Gifford E. Massie"; and No. 6, income tax work, which was reduced to $1,402. During the hearing, the parties agreed that the real estate taxes would be allowed to the full amount of $7,433.83. Although discussed later in the opinion, the lower courts found, and we agree, that Gifford owned an undivided one-half interest in the cattle. Consequently, No. 3, personal property tax on the cattle, must be reduced, per stipulation, by one-half, to $1,090.64. Based on the stipulations of the parties, Gifford's claim amounted to $40,771.49, which is $628.69 over his original claim of $40,142.80. Generally, a party cannot recover for any amount exceeding his original claim. See *Storm v. Cluck*, 168 Neb. 13, 95 N.W.2d 161 (1959). However, parties to a suit are bound by their stipulations. See *Havelock Bank v. Western Surety Co.*, 217 Neb. 560, 352 N.W.2d 855 (1984). The claim of Gifford Massie is allowed in the amount of $40,771.49.

The estate next contends that "[t]he District Court erred in ruling that the decedent was competent in October of 1977 to transfer her livestock brand to the claimant, and in ruling that the Claimant owned one-half of the cattle." Brief for Appellant at 2-3.

Regarding the issue of the one-half ownership of the cattle, Gifford presented unrebutted testimony that as early as 1975, Myrtle Massie had given him an undivided one-half interest in all the cattle. The records of Gifford and Myrtle confirm Gifford's interest. Gifford also testified that after a "shake-up" with Joseph Massie, the personal representative of the estate, Gifford claimed an interest in all the cattle, since he was the owner of the livestock brand. Both lower courts held, and rightfully so, that Gifford presented sufficient evidence to sustain his contention of an undivided one-half ownership of the cattle.

Both courts also correctly decided that the estate rebutted Gifford's prima facie evidence, via the brand transfer, that he owned all the cattle. See *Bendfeldt v. Lewis*, 149 Neb. 107, 30 N.W.2d 293 (1948).

Concerning Myrtle Massie's competency to transfer the livestock brand to Gifford in October 1977, the estate, in order to prove undue influence, had the burden of proving (1) that the person who executed the instrument was subject to undue influence; (2) that there was opportunity to exercise undue influence; (3) that there was a disposition to exercise undue influence for an improper purpose; and (4) that the result was clearly the effect of such undue influence. See *McDonald v. McDonald*, 207 Neb. 217, 298 N.W.2d 136 (1980). The trial court's findings concerning products of undue influence are determinations of fact. As such, the standard of review is whether the findings are supported by sufficient evidence, which are not to be disturbed unless clearly wrong. *In re Estate of Marsh*, 216 Neb. 129, 342 N.W.2d 373 (1984).

Myrtle's physician and several of her children testified that, in their opinion, Myrtle was not competent in October 1977 to transfer the livestock brand to Gifford. The notes compiled by the staff at the rest home in which Myrtle resided in 1977 showed that Myrtle was confused and disoriented much of the time. Gifford Massie and his wife, Ruth, both of whom visited Myrtle almost daily, testified that Myrtle was competent when she transferred the brand. The director of activities at the rest home also testified that, in her opinion, Myrtle was competent to transfer the livestock brand in 1977.

Although the question of Myrtle's competency and the broader issue of undue influence are extremely close, we hold that the district court's finding is not clearly wrong and, thus, will not be disturbed.

The final issue presented in this case is whether a claim which was barred by the nonclaim statute, Neb. Rev. Stat. § 30-2485 (Reissue 1979), may be pled as a setoff or recoupment to a counterclaim filed by the estate. We have not directly ruled on this issue, and there is a conflict of authority in other jurisdictions. See Annot., 36 A.L.R.3d 693 (1971).

We are of the opinion that when a counterclaim is filed by an

estate, the defendant may plead the defense of recoupment to reduce the amount of the counterclaim even though the defendant did not file a claim against the estate. Black's Law Dictionary 1439-40 (4th ed. 1957) defines recoupment as follows:

Defalcation or discount from a demand. A keeping back something which is due, because there is an equitable reason to withhold it. . . .

. . . .

"Recoupment" differs from "set-off" in this respect: that any claim or demand the defendant may have against the plaintiff may be used as a set-off, while it is not a subject for recoupment unless it grows out of the very same transaction which furnishes the plaintiff's cause of action.

. . .

In *Nathan v. McKernan*, 170 Neb. 1, 16, 101 N.W.2d 756, 766 (1960), we stated:

In that connection, defendants' answers were in effect a defense of recoupment. In Oft v. Dornacker, 131 Neb. 644, 269 N.W. 418, and again in Mettlen v. Sandoz, 131 Neb. 625, 269 N.W. 98, *this court concluded that the defense of recoupment or reduction of plaintiff's claim must arise out of the same transaction as plaintiff's claim, and survives as long as plaintiff's cause of action exists, even if affirmative legal action upon the subject of recoupment is barred by the statute of limitations.* Therefore, plaintiff's contention with regard to the statute of limitations barring defendants' claim has no merit.

(Emphasis supplied.) Similarly, the defense of recoupment is not barred by § 30-2485.

In the instant case the estate's counterclaim alleged that Gifford had converted $97,189 in proceeds from the sale of cattle belonging to the estate. Gifford's response was that he had expended $51,632 for care and management of the cattle and $24,404.57 for feed for the cattle. Neither of these expenses was specified in Gifford's initial claim. The estate contends that these "claims" are barred, as they were not filed in accordance with § 30-2485. In the alternative, the estate contends that the amount expended for care and management of the cattle is unreasonable.

As noted previously, the defense of recoupment is not barred by § 30-2485. The expenses incurred in maintaining the cattle for sale and the subsequent sale of the cattle are, in effect, relating to the same transaction. It would result in unjust enrichment to allow the estate to recover the gross proceeds from the sale of the cattle without having to pay for any of the necessary expenses incurred.

Concerning the reasonableness of the expenses for care and management of the cattle, Gifford presented sufficient evidence that this fee for labor, mileage, and management of the cattle over the 4-year period in question was reasonable. Even under the estate's version of a reasonable fee of $1,000 a month, *for labor only*, the expense would be $48,000.

The parties stipulated that an expense of $21,733 was reasonable for cattle feed.

The parties also stipulated that Gifford had deposited in his checking account a total of $39,017.02 from the proceeds of grain sales and other sources which belonged to the estate. The parties later agreed that this sum should be reduced by $1,169, leaving a balance of $37,848.02. Of this $37,848.02, a $1,665 check, payable to Myrtle Massie from the Commodity Credit Corporation, remained in dispute. Gifford admitted the receipt and deposit of the check in his account but maintained that the proceeds were a partial reimbursement for labor, materials, and tax for the water pipeline which he installed on his mother's farm. Gifford maintained, and the record proves, that he expended a total of $3,500.88 for the pipeline expenses, leaving an unpaid balance of $1,835.88.

The $1,665 check was for partial reimbursement for the installation of a water pipeline. The pipeline was installed and paid for by Gifford. Reimbursement for installation and the installation itself concern the same transaction; consequently, the estate is not entitled to a credit for these funds.

As to the unpaid balance of $1,835.88, Gifford did not include this item in his original claim. The defense of recoupment, by its nature, can be used only in a defensive character relating to the same transaction. See *Mettlen v. Sandoz*, 131 Neb. 625, 269 N.W. 98 (1936). Because Gifford was not in possession of the unpaid balance of $1,835.88, this item represents an affirm-

ative claim against the estate which was not filed in compliance with § 30-2485. Any claim such as this not filed within the time limits provided by statute and after due notice is forever barred. See *Supp v. Allard*, 162 Neb. 563, 76 N.W.2d 459 (1956).

In conclusion, we hold the district court was correct in finding that the transfer of the livestock brand from Myrtle Massie to Gifford Massie was not a product of undue influence. The court was also correct in determining that Gifford owned an undivided one-half interest in the cattle. The following computations are dispositive of the remainder of this case, keeping in mind, as the appellant correctly points out but the lower courts apparently failed to consider, that the disputed proceeds of the counterclaim were in Gifford's possession and not in the possession of the estate.

CREDITS OF CLAIMANT

|  |  |  |
|---|---|---|
| Claim allowed in the amount of |  | $ 40,771.49 |

CREDITS TO THE ESTATE

|  |  |  |
|---|---|---|
| One-half proceeds from sale of cattle | $48,594.50 |  |
| Less one-half for cattle feed | 10,866.50 |  |
| Less one-half for care of cattle | 25,816.00 |  |
| Net proceeds from sale of cattle |  | $ 11,912.00 |
| Proceeds from other sources | $37,848.02 |  |
| Less pipeline reimbursement | 1,665.00 |  |
| Net balance of proceeds from other sources |  | $ 36,183.02 |
| Total to be credited to claimant | $40,771.89 |  |
| Total to be credited to estate | 48,095.02 |  |
| Net balance in favor of estate |  | $ 7,323.13 |

The district court's order is affirmed as modified.

AFFIRMED AS MODIFIED.

WHITE, J., participating on briefs.

KRIVOSHA, C.J., concurs in the result.