In re FERNANDES SUPER MARKETS, INC., Debtor.

FERNANDES SUPER MARKETS, INC., Plaintiff,

v.

BUTTERFIELD INSURANCE COMPANY, INC., Defendant.

No. 78–1713–HL.

United States Bankruptcy Court, D. Massachusetts.

Nov. 19, 1979.

Charles R. Bennett, Jr., Julius Thannhauser, Riemer & Braunstein, Boston, Mass., for plaintiff Fernandes Super Markets, Inc.

Stephen F. Gordon, Carol J. Kenner, Guy B. Moss, Widett, Slater & Goldman, P. C., Boston, Mass., for defendant Butterfield Ins. Co.

## MEMORANDUM RE SET–OFF

HAROLD LAVIEN, Bankruptcy Judge.

The defendant, Butterfield Insurance Agency, Inc. (Butterfield) seeks to set off certain monies it received from the Central Mutual Insurance Company (Central) against the debt owed to Butterfield by Fernandes, thereby receiving 100 cent dollars and reducing its unsecured claim. The monies in question represent a return of overestimated premium payments and dividends in connection with a workmen's compensation policy placed with Central by Butterfield on behalf of Fernandes, the insured. The parties have filed cross-motions for summary judgment based on an agreed statement of facts, have submitted briefs in support of their motions, and have presented oral arguments before the court during which they made further factual stipulations.

The parties have agreed to the following facts. Butterfield is a duly licensed insurance agent under the laws of Massachusetts and is party to an agency agreement with Central. Pursuant to the agency agreement between Butterfield and Central, Butterfield is obligated to pay all premiums due on policies placed with Central regardless of whether he has collected such amounts from the insured. Butterfield, on behalf of Fernandes, placed a workmen's compensation policy with Central which commenced coverage on January 1, 1978. Fernandes filed a petition for arrangement under Chapter XI of the Bankruptcy Act on September 12, 1978. The policy was continued in full force and effect through January 1, 1979 at the request of the debtor-in-possession. Fernandes did not make the pre-filing estimated deposits requested by Central and therefore Butterfield, under its agency agreement, paid all of the pre-filing estimated deposits to Central. Butterfield filed a proof of claim for all of its payments to Central. All premiums due for the post-petition period have been paid by the debtor-in-possession. In January, 1979, Butterfield received a check from Central, made payable to Butterfield, in the amount of $66,147.35. The check represented an unearned premium refund of $31,573.25 and a dividend payment of $34,574.10. The premium refund resulted from a determination, after an audit, that the estimated premium charged by Central for the workmen's compensation coverage exceeded the actual earned premium for both the pre-petition and post-petition periods of the policy. The dividend payment resulted from a 10% dividend declared by Central and was computed on the basis of premiums paid both prior to and subsequent to the filing of the petition by Fernandes. Butterfield seeks to retain the check as a set-off under section 68 a of the Bankruptcy Act. Fernandes has counterclaimed seeking return of the funds.

Both parties agree that Fernandes is entitled to receive on its counterclaim those portions of the funds which are attributable to the post-petition payment of premiums by the debtor-in-possession amounting to $4,007.30 as refund of premium and $9,029.50 as dividend. It was further agreed by the parties during oral argument that the amount of the refunded unearned premium attributable to the period preceding the filing of the petition equalled $29,227.70 and the amount attributable to the pre-petition dividend was $25,544.50.[1]

1. Addition of all agreed amounts attributable to both pre-filing and post-filing refunds of unearned premiums and payment of dividends yields a total sum of $67,809. This sum is greater than the actual check for $66,147.35 received by Butterfield from Central. Appar-

■ Section 68a of the Bankruptcy Act, 11 U.S.C. § 108(a) provides:

In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed.

*Id.* The purpose of the set-off provision of the Bankruptcy Act is to avoid the potential injustice in requiring a creditor "to prove his claim in full and accept possible dividends thereon and at the same time pay in full his indebtedness to the estate." 4 *Collier on Bankruptcy* ¶ 68.02 at 853 (14th ed. 1978). To satisfy the requirements for a set-off under section 68a, the debts in question must be mutual between the bankrupt and the creditor claiming the set-off. *In re Vehm Eng'r Corp.,* 521 F.2d 186, 190 (9th Cir. 1975); *In re Plywood Company of Pennsylvania,* 425 F.2d 151, 154 (3d Cir. 1970); *Goldstein v. Katz,* 325 Mass. 428, 430, 91 N.E.2d 237, 239 (1950); 4 *Collier on Bankruptcy* ¶ 68.04(2) at 862–65 (14th ed. 1978). Mutuality requires that "the debts and credits must be in the same right, and between the same parties, standing in the same capacity." 4 *Collier on Bankruptcy* ¶ 68.04(2.1) at 867 (14th ed. 1978).

■ In the present case, Fernandes contends that Butterfield received the funds from Central as the agent of Fernandes. Thus, Fernandes concludes that Butterfield holds such funds in trust for Fernandes. It has long been held that funds held in trust for another may not be used to accomplish a set-off because the requisite mutuality is lacking inasmuch as the agent-trustee is not functioning in his individual capacity. *Western Tie and Timber Co. v. Brown,* 196 U.S. 502, 509, 25 S.Ct. 339, 49 L.Ed. 571 (1905); *In re Bob Richards Chrysler-Plymouth Corp.,* 473 F.2d 262, 265 (9th Cir. 1973); *Bayliss v. Rood,* 424 F.2d 142, 147 (4th Cir. 1970).

Dealing first with the agent's right to set off the refunded pre-filing premium, it is necessary to examine the nature and the source of the payment to determine mutuality. In a contract for insurance coverage, the policyholder is obligated to pay premiums, and when the policy is procured through an agent, the agent may be obligated by his agency agreement to pay the insurer regardless of whether the agent has collected the premium from the policyholder. Thus, when an agent is involved, there are two separate debtor-creditor relationships—the first between the agent and the policyholder, the second, and a somewhat independent one, between the agent and the insurer.

In the case of a workmen's compensation policy, there is no fixed premium, rather, an initial estimated premium in the nature of a deposit is required by the insurer. At the end of the policy period the policyholder's payroll is audited and the actual earned premium is calculated, resulting in either an additional billing or a return of the excess estimated premium. In the present case, because of the closing of stores and reduction in employees, the actual earned premium was substantially less than the initial estimates, resulting in the refunded premiums in question.

All of the pre-filing estimated premiums were paid by the agent when he was not paid by the policyholder. The agent, however, was ultimately only required to pay the actual premium and any excess was in fact a return of his own funds being held on the agent's account by the insurer in effect as an excess deposit. Under these circumstances both logic and equity would require that the agent be able to recover his own funds which were paid to the insurance company for the specific and limited purpose of covering the ultimate actual earned premium and which were intended to become the property of the insurance company only to the extent of the actual earned

---

ently, the $1,661.65 difference between the figures represents a 5% commission on the returned premiums paid to the agent. Both parties were questioned by the court during oral argument about this discrepancy. The parties

have agreed to the amounts set forth in the text of this opinion and are deemed to have waived any arguments regarding the propriety of the allocation of this commission credit.

premium. This conclusion is buttressed by the agent's right of set-off under section 68a of the Bankruptcy Act. The agent and the debtor shared a mutuality as to the premium obligation which had been advanced by the agent on behalf of the debtor.[2]

The agent is entitled to set-off and retain $29,227.70 the return premium attributable to the Butterfield pre-filing payment.

We now consider the dividends attributable to the prefiling payment of premiums by the agent which the agent seeks to set off against his proof of claim.

There is no contractual agreement, express or implied, between the agent and the policyholder relating to dividends, and there is no past practice or course of dealing in regard to the dividends because this was the first year of the policy. Unlike the matter of premiums, the agent has no obligation and plays no role in regard to dividends. The only contractual relationship runs between the insurance company and the policyholder. The section of this particular workmen's compensation policy entitled "Mutual Policy Conditions" provides in pertinent part:

> UNABSORBED PREMIUMS—Policyholders of this company shall participate in the earnings of the company in such manner and to such extent as may be determined by the Board of Directors, in its absolute discretion, from time to time. Action of the Board of Directors in the distribution of unabsorbed premiums shall be conclusive and binding on all members of the company.

The directors determine the amount and manner of declaring the dividend, if any. Traditionally, dividends are computed as a percentage of premiums, but this need not always be the case. In any event, dividends, like the actual coverage of the policy itself, are one of the benefits of the policy owed by the insurer to the policyholder. As is the case with payments for loss, the agent has no right to the dividend and is at most a conduit allowed by the insurance company to transmit the dividend to the policyholder for purposes of goodwill. The agent has no right to the dividend nor does it reflect any mutual contractual obligation between the agent and policyholder and, therefore, there is no mutuality and no right of set-off under section 68a.[3]

All of the cases cited by Butterfield and our independent research deal with return premiums or the relationship of the insurance company and the policyholder. We find no case allowing an agent to set off dividends.

■ Pursuant to the above findings of fact and rulings of law, Butterfield will be allowed to set off the amount of the refunded unearned premium attributable to the pre-petition period in the amount of $29,227.70. Fernandes is entitled to recover the amounts attributable to the post-petition refund of unearned premiums, $4,007.30, and the dividends based on the post-petition payment of premiums, $9,029.50, and the dividends attributable to the pre-petition period in the amount of $25,544.50.

Butterfield will be allowed an unsecured claim reflecting all of the premiums it advanced on behalf of the debtor less the set-off of $29,227.70.

The debtor's counsel shall submit an appropriate order within 10 days.

---

2. This right of set-off and the absence of a barring fiduciary obligation is reflected in the philosophy of section 187B of Chapter 175 of the Massachusetts General Laws. Section 187B provides in part that "[a]n insurance agent may offset funds due an insured for return premiums on any policy against amounts due him from the same insured for any due and unpaid premiums on any other policy issued by the same insurer."

3. In his brief, Butterfield relies heavily on the provisions of section 187B of Chapter 175 of the Massachusetts General Laws. *See* note 2 *supra*. Fernandes contends that section 187B is inapplicable in the present case because the overall statutory scheme indicates that the provision applies only in the case of a cancellation of an insurance policy. If this statutory provision is applicable at all, it should be noted that it only refers to return premiums and, in any event, has no application in regard to the dividends in question in the present case.