**In the Matter of NICKERSON & NICKERSON, INC., Debtor.**

**Bankruptcy No. BK85–1713.**

United States Bankruptcy Court, D. Nebraska.

Feb. 25, 1986.

Robert F. Craig of Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb. (Frank M. Schepers, on brief), for Alexander & Alexander, Inc.

Douglas E. Quinn of Thompson, Crounse, Pieper & Quinn, Omaha, Neb., for trustee.

MEMORANDUM OPINION RE MOTION FOR RELIEF FILED BY ALEXAN-DER & ALEXANDER, INC.

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This matter was heard as a final eviden-tiary hearing on the motion for relief filed by Alexander & Alexander, Inc. Hearing date was December 18, 1985. Appearing on behalf of the moving party, Alexander & Alexander, Inc., was Robert F. Craig of Kennedy, Holland, DeLacy & Svoboda, Omaha, Nebraska. Frank M. Schepers ap-

peared with Mr. Craig on the trial brief and the supplementary brief. Douglas E. Quinn of Thompson, Crounse, Pieper & Quinn of Omaha, Nebraska, appeared on behalf of Merle Nicola, Trustee of Nickerson & Nickerson, Inc.

Following the evidentiary presentation, the parties requested the opportunity to provide the Court with post-trial briefs. The final brief was received on January 30, 1986. The Court, having reviewed the evidence presented at the hearing, considered arguments of counsel and read the pretrial and post-trial briefs, files this Memorandum Opinion containing the Court's findings of fact and conclusions of law.

### Findings of Fact

Nickerson & Nickerson, Incorporated, (hereinafter referred to as Nickerson or debtor), came within the jurisdiction of this Court by the filing of an involuntary Chapter 7 petition on August 1, 1985. Order for relief was entered on October 30, 1985.

Alexander & Alexander, Inc., (hereinafter referred to as A & A or creditor), filed a motion requesting relief from the automatic stay on October 25, 1985.

A & A is an insurance brokerage firm which procured insurance coverage for Nickerson prior to the involuntary petition being filed against Nickerson.

Over several years it became the practice of A & A and Nickerson for A & A to determine Nickerson's insurance needs, including worker's compensation, property insurance and liability insurance, among others; put together a package of insurance policies obtained from various companies; advance the necessary premiums to bind the companies to the policies; present the policies to Nickerson and bill Nickerson for the appropriate premiums.

Some of the premium billing was based upon estimates of the total premium cost. For example, worker's compensation premiums are some function of total payroll and the actual cost of the policy cannot be determined until an audit by the insurance company after the end of the policy year.

Such audit will determine whether the premiums paid were in excess of the actual cost of the policy or were insufficient to completely pay the total amount due. If the premiums paid by Nickerson on such policies were in excess of the cost of the policy, the company would refund the excess to A & A and A & A would either refund the total amount to Nickerson or would withhold a portion of the refund to apply against the advances A & A had made on behalf of Nickerson, either specifically on the worker's compensation policy or on other policies.

If, after audit, it was determined that Nickerson owed more for the policy than had been previously paid to the company, the company would bill A & A and A & A was responsible for billing and collecting the additional premium from Nickerson. The practice between Nickerson and A & A was that in such a case A & A would advance the additional premium and then bill Nickerson.

A & A is not an insurance company. It does not issue insurance policies. It solicits customer business, determines appropriate policies, and arranges for the issuance of policies from companies it represents. The companies look to A & A for premium payments and are not concerned with the problem A & A may have concerning the collection of those premiums from Nickerson. The only time the company will look directly to Nickerson for premium payments is when A & A notifies the company that it is unable to or unwilling to collect the premiums and gives appropriate notice pursuant to the contractual arrangement between A & A and the company.

There was no written agreement between Nickerson and A & A concerning the premium advances made by A & A. A & A took no security interest in any assets of Nickerson to protect its claim for such advances.

This system worked well for the insurance companies, A & A and Nickerson for several years. However, when the involuntary bankruptcy petition was filed, A & A had advanced $33,914 that it had not been

able to collect from Nickerson. Following the policy procedures, A & A requested the companies to cancel the policies for nonpayment of premium. Such a request triggered the appropriate audits and caused some companies to return unearned premiums resulting from early termination of the policies.

The result of the audits and the return of unearned premiums was that on the date of the trial of this matter, the companies had returned to A & A $23,438.97. It was made clear to the Court that it was possible that there would be additional amounts paid by the companies to A & A after the date of the hearing.

It is the position of A & A that the monies received from the companies as return of unearned premium belong to A & A, either as a setoff pursuant to Bankruptcy Code § 553(a) or as a recoupment.

The position of the trustee is that A & A is an unsecured creditor that loaned Nickerson amounts sufficient to pay premiums with hope that Nickerson would repay the loans. Since Nickerson is in bankruptcy it is unable to repay the loans and A & A should stand in line with all other unsecured creditors. In addition, since A & A is the agent of the debtor, it is holding assets of the debtor and should turn those assets over to the trustee immediately.

### Issues

1. Is an insurance broker the agent of the insurance company or the agent of the customer? Answer: The company.

2. Does an insurance broker have the right to set off amounts in its possession which it has received from insurance companies as return of unearned premiums against amounts owed by the debtor to the insurance broker? Answer: Yes.

3. May the insurance broker, through recoupment, retain funds in its possession which were received by it from an insurance company as a return of unearned premium which had been previously advanced by the broker? Answer: Yes.

### Conclusions of Law

The Bankruptcy Code permits a creditor to set off a mutual debt under certain circumstances. Code § 553(a) provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...

To maintain a right of setoff, the creditor must prove the following:

1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.

2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.

3. The debt and the claim are mutual obligations.

See *In Re Fulghum Const. Corp.*, 23 B.R. 147, 151 (Bkrtcy.M.D.Tenn.1982).

The right to setoff may be asserted in bankruptcy even though one of the debts involved is absolutely owing but not presently due when the petition is filed. *4 Collier on Bankruptcy*, Paragraph 553.-10[2] (15th Ed.1985).

Nebraska law recognizes the theory of setoff with regard to insurance premiums. *The Nebraska Administrative Code*, Department of Insurance, Title 210, Chapter 37, *004.07* states:

[A] An insurer may take additional credit by offset to amounts which would have otherwise been non-admitted when the insurer holds deposit premiums, return premiums due, premium refunds due, or retrospective credits due to the same insured.

Nebraska law also makes the insurance agent an agent of the insurance company for all intents and purposes. See *Heikes v. Farm Bureau Ins. Co.*, 181 Neb. 827, 151 N.W.2d 336 (1967).

In other words, in Nebraska, the insurance agent is the agent of the company and under Nebraska law the company is allowed to off set return premiums due or premium refunds due against overdue premiums.

■ Nickerson owes A & A approximately $34,000 and the obligation arose prior to the commencement of the bankruptcy. Therefore, A & A has a claim against Nickerson. 11 U.S.C. § 101(4) defines prepetition "claim" as:

"... (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach or performance if such breach gives rise to right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured ..."

Bankruptcy Code § 101(11) states that a "debt" means liability on a claim.

A & A has a claim for premiums not paid, but absolutely owing prepetition.

A & A, as agent for the insurer, owes a debt to Nickerson for unearned prepetition premiums, the amount of which could not be calculated until after the bankruptcy petition was filed.

The trustee argues that the business practice of the parties prior to the bankruptcy petition being filed is not binding upon the trustee. The trustee argues that the contract of insurance requires that if the earned premium is less than the amount previously paid to the company it shall return to the *insured* the unearned portion. Therefore, the trustee claims that there is no authority by contract or otherwise for the insurance company to send the unearned portion of the premium to the broker, thereby permitting the broker to claim some type of offset or recoupment rights. The problem with the trustee's position with respect to the language of the policy is that the policy language does not mandate return of unearned premiums to the insured in every case. For example, Exhibit 1 is the Royal Insurance Company Workers' Compensation Policy for 1984–1985. At page 2, Paragraph No. 1 *Premium,* the policy discusses "deposit premium". It states:

"The deposit premiums shall be retained by the company until termination of this policy and credited to the final premium adjustment ...

"If the earned premium (is less than the amount previously paid) the company shall return to the insured the unearned portion paid by the *insured.* " (Emphasis supplied.)

The policy itself states that the insurer will return unearned premiums to the insured, if the insured has paid those premiums. The drafters must have contemplated a situation in which the unearned premiums would be returned to some entity other than the insured. Otherwise, the last four words of the discussed paragraph would be surplus.

There are several cases which have considered the problem being discussed. *In re Fernandes Supermarket, Inc.,* 5 B.C.D. 1056 (Bkrtcy.D.C.Mass.1979), a case decided under the Bankruptcy Act, the Court permitted the insurance agent to offset certain refunds due the debtor against premiums owed to the agent by the debtor. The Court reasoned as follows:

"In the case of a workman's compensation policy, there is no fixed premium. Rather, an initial estimated premium in the nature of a deposit is required by the insurer. At the end of the policy period the policyholder's payroll is audited and the actual earned premium is calculated, resulting in either an additional billing or a return of the excess estimated premium. In the present case, because of the closing of stores and reduction in employees, the actual earned premium was substantially less than the initial estimates, resulting in the refunded premiums in question.

"All of the pre-filing estimated premiums were paid by the agent when he was not paid by the policyholder. The agent, however, was ultimately only required to pay the actual premium and any excess was, in fact, a return of his own funds being held on the agent's account by the insurer in effect as an excess deposit. Under these circumstances, both logic and equity would require that the agent be able to recover his own funds which were paid to the insurance company for the specific and limited purpose of covering the ultimate actual earned premium and which were intended to become the property of the insurance company only to the extent of the actual earned premium." *Id.,* 5 B.C.D., at 1057.

However, the Court in the case of *In re V.N. DePrizio Const. Co.,* 52 B.R. 283 (Bkrtcy.N.D.Ill.1985), reached the opposite conclusion. That court determined that the refunds neither represented a mutual debt nor did the refunds nor the debt arise prepetition, because they could not be determined until calculated after audit.

Also, in the case of *In re Virginia Block Co.,* 16 B.R. 771 (Bkrtcy.W.D.Va.1982), the court refused to follow the *Fernandes* logic. That court states that since the policies require return of premium refunds be made to the insured, it will strictly construe the terms of the policies and will not permit a course of dealing to rise to the level of a contract between the insured and the agent. The court also questions the mutuality of the debts.

Having considered all of the above-listed cases, it is the opinion of this Court that some of the policies permit the insured to receive the refunds only if the insured paid the premiums. The debts are mutual and they shall be granted relief to off set the mutual debts. The logic of the *Fernandes* case is convincing. To permit the insured to receive refunds of payments made by the broker would be unjust enrichment of debtor, or, in this case, of other unsecured creditors.

Finally, although the matter may have been resolved by the determination above that A & A may off set the mutual debts, the parties have strenuously argued for and against recoupment.

A recent case in Nebraska concerning the right of recoupment and its definition, is *In re Estate of Massie,* 218 Neb. 103, 109, 353 N.W.2d 735 (1984). The Nebraska Supreme Court quoted from Black's Law Dictionary, 1439–40 (4th Ed.1957) with approval:

" 'Recoupment' differs from 'setoff' in this respect: that any claim the defendant may have against the plaintiff may be used as a setoff, while it is not a subject for recoupment unless it grows out of the very same transaction which furnished the plaintiff's cause of action."

The distinction between setoff and recoupment is given effect under Federal Bankruptcy Law. *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984). See also *In re B & L Oil Company, sub nom Ashland Petroleum Company v. Garry R. Appel, Trustee,* 782 F.2d 155 (10th Cir.1986).

■ In conclusion, A & A may extinguish by recoupment that portion of the debt Nickerson owes A & A on the 1984–1985 Royal Worker's Compensation Policy 211180 by applying that portion of the returned unearned premium on that specific policy. The remainder of the funds held by A & A as a result of unearned premium refunds may be set off by A & A against the amount owed to it by Nickerson. After performing such recoupment and setoff functions, if A & A still holds any funds representing return of unearned premiums such funds should be immediately turned over to the trustee.