In re H. WOLFE IRON & METAL COMPANY, Debtor.

REINHARDT'S AGENCY, Plaintiff,

v.

H. WOLFE IRON & METAL COMPANY, Debtor,

and

William M. Panella, Trustee, Defendants.

Bankruptcy No. 85–318.
Motion No. 86–2796.

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 10, 1986.

Bernhard Schaffler, Schaffler & Bohm, Pittsburgh, Pa., for debtor.

P. Raymond Bartholomew, Cusick, Madden, Joyce and McKay, Sharon, Pa., for plaintiff.

David P. Braun, Campbell & Levine, Pittsburgh, Pa., for trustee.

William M. Panella, New Castle, Pa., trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is a Motion For Relief From Stay by Reinhardt's Agency ("Reinhardt's"), requesting that the Court grant said Motion authorizing setoff between Reinhardt's and the Debtor.

The Trustee objected to the Motion, arguing that setoff was inappropriate, and that Reinhardt's should be directed to turn over the property in its control to the Trustee. The Trustee also averred that a previous transfer made by the Debtor to Reinhardt's should be avoided as an improper post-petition transaction.

Initially, Reinhardt's objected to the Trustee's counterclaim as being improperly pled in a response to its motion. However, in the interest of judicial economy, the parties agreed to allow the Court to address all of the issues together. Similarly, Reinhardt's raises the judicial doctrine of recoupment in its brief. While the question of recoupment was not properly pled, the Court will examine that issue as well.

Based upon official records and the briefs of the parties, as well as the additional research of this Court, Reinhardt's motion will be denied, both as to setoff and recoupment. Concurrently, Reinhardt's will be directed to return both of the funds in question to the Debtor's estate.

## FACTS

H. Wolfe Iron & Metal Company ("Debtor") filed a Chapter 11 bankruptcy petition on February 14, 1985. The case was converted to a Chapter 7 liquidation on February 19, 1986, at which time the Trustee was appointed.

**756**

The Debtor purchased its various insurance policies from Reinhardt's, including fleet, workers' compensation, property, and liability. Reinhardt's placed these policies on the Debtor's behalf, and forwarded the premium payments due, thereafter billing the Debtor for these amounts. As of the date of the Debtor's bankruptcy filing, Reinhardt's considered itself an unsecured creditor and averred it was owed $52,837.40 for premiums paid on the Debtor's behalf.

On May 2, 1985, Reinhardt's received a refund check from a third-party insurer in the amount of $4,796.00, representing a returnable dividend for favorable work loss experience under the Debtor's workers' compensation coverage for the period October 1, 1983 to October 1, 1984. The check was made payable to the Debtor. The Debtor thereafter was induced to endorse said check over to Reinhardt's, and Reinhardt's then reduced the amount of its claim to $48,041.40.

On May 5, 1986, the third-party insurer issued another refund check in the amount of $6,517.00, representing a similar dividend for favorable work loss experience for the period October 1, 1984 to October 1, 1985. This check was also made payable to the Debtor, and is presently in Reinhardt's possession.

## ANALYSIS

Reinhardt's claims that both the first and second refund checks should be allowed as setoffs against its pre-petition claim, pursuant to Section 553(a) of the Bankruptcy Code. In the alternative, Reinhardt's requests this Court grant it the right to these refund checks via the judicial doctrine of recoupment.

The Trustee has challenged Reinhardt's ability to claim these setoffs, and asserts that the request for recoupment is inappropriate. Therefore, the Trustee requests this check be turned over as property of the estate. Further, the Trustee contends that the first refund check endorsed over to Reinhardt's constitutes an avoidable post-petition transfer pursuant to Sections 549 and 550 of the Bankruptcy Code. We address these issues seriatum.

Section 553(a) of the Bankruptcy Code provides a method by which a creditor of the Debtor, who is simultaneously indebted to the Debtor, may be preferred as to other creditors. There exist, *inter alia,* two key restrictions on this right of setoff:

1) there must be mutuality of claims; and

2) the claims must both arise pre-petition.

■ It is essential that both these conditions be met. As this statutorily permitted setoff creates a permissible preference of one creditor over others, it must be strictly construed. In the case at bar, we need not reach the complex factual question of whether these claims both arose pre-petition, as it is clear to this Court that the requisite mutuality between the parties does not exist irrespective of when these claims arose.

■ The parties have directed the Court's attention to several cases and the Court's research has uncovered additional decisions which speak directly to the issue at hand. There are three specific cases which address the issue of setoff as it pertains to refunds on insurance premiums, and one additional case which addresses the relationship between the insurance agency and the insurer. All four cases deal with the question of mutuality, at least indirectly. The decisions in these cases are split, and it appears that the key to the distinction is the status of the insurance agency as an insurance "agent" or as an insurance "broker":

[The] agent is tied to his company ... The broker on the other hand, is an independent middleman, not tied to a particular company ...

*Osborn v. Ozlin,* 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1940).

In the case of *In re Fernandes Super Market, Inc.,* 1 B.R. 299 (Bktcy.D.Mass. 1979), the Court permitted an insurance agent to setoff a workers' compensation refund against the premiums the agent had

paid on behalf of the insured. Factually, the *Fernandes* case is distinguishable from the case at bar. Initially, the Court described the insurance agent as a party to an Agency Agreement between the insurer and itself. Said Agreement required the agent to pay premiums on policies placed without regard to the agent's ability to collect those premiums from the insured. Additionally, the refund received from the insurer was made payable to its agent, and not the insured. This case clearly found mutuality based upon the agency relationship of the insurer and the insurance agent, creating one party with a mutual claim and debt to and against the debtor.

Similarly, in *Matter of Nickerson and Nickerson, Inc.*, 62 B.R. 83 (1986), the Court granted the insurance agent's setoff request. In that case, however, the Court specifically stated that under Nebraska law, the insurance agent is the agent of the insurer for all intents and purposes. It can therefore be deduced that under Nebraska law, the agent and the insured are one and the same party, thereby creating the necessary mutuality.

Pennsylvania law specifically defines insurance "agent" and insurance "broker" separately, and the cases annotated thereto show no inclination by our State Courts to create such a permanent agency relationship. *See* 40 P.S. §§ 235, 251; *Kairy's v. Aetna Casualty & Surety Co.*, 314 Pa.Super. 502, 461 A.2d 269 (1983); *Sands v. Granite Mutual Ins. Co.*, 232 Pa.Super. 70, 331 A.2d 711 (1974).

The burden of establishing the existence of an agency relationship falls upon the party asserting the existence. *Scott v. Purcell*, 490 Pa. 109, 415 A2d 56 (1980). In order to show the requisite mutuality to institute a setoff, Reinhardt's must show that it acted as the agent of the insurer rather than the insured. No such statement was pled, nor did Reinhardt's offer such evidence at hearing. After having the opportunity to present two briefs to the Court, Reinhardt's has yet to offer any argument to prove it acted as the agent of the insurer. We, therefore, cannot bestow such a status upon it.

In *In re Ray A. Dart Insurance Agency, Inc.*, 5 B.R. 207 (Bktcy.D.Mass.1980), the Court was required to determine whether the independent insurance agency or the insurer was the rightful owner of the insurance "expirations" (i.e. the information relating to policy initiations, renewals and terminations). In finding that the facts of the particular case favored the independent agent, the Court described the relationship between an independent agent and an insurer:

> [The] modern insurance agent is no longer analogous to the traditional principal-agent relationship. The insurance agent is not an employee of the insurance company soliciting business on its behalf but rather is an independent businessman soliciting business on his own behalf ... The agent pays his own sales expenses and overhead, has the responsibility of financing premiums beyond the companies' initial credit period, and bears personally and directly the risk of nonpayment ... In a real sense the agent and not the insured is the company's customer.

5 B.R. at 209–10.

The case which most closely parallels the case at bar is *In re V.N. DePrizio Construction Co.*, 52 B.R. 283 (Bktcy.N.D.Ill. 1985). In this case, the Debtor placed a workers' compensation policy with an insurer through an insurance broker. The parties had followed a course of performance whereby the broker paid the premiums to the insurer and was thereafter reimbursed by the debtor. The Court determined that the moneys paid to the insurer by the broker did not create an escrow account between the broker and the Debtor, but rather, made the broker an unsecured creditor of the Debtor in its own right. The Court, in addressing the concept of mutuality, stated that:

> [To] be mutual then, the parties must have full and concurrent rights against each other.

*Id.* at 287.

In the case at bar, Reinhardt's has a right to payment from the Debtor. How-

ever, the Debtor's right to the premium refund arises out of its workers' compensation policy with the insurer. As the insurer and Reinhardt's are not automatically one and the same party, and as we have not been offered any indication of an agency relationship by which Reinhardt's could claim to be one party with the insurer, the requisite mutuality to create a setoff does not exist.

We now turn to Reinhardt's claim of entitlement under the doctrine of recoupment.

■ It appears to this Court that Reinhardt's reliance on the recoupment doctrine is misplaced, both legally and procedurally. Recoupment entitles a defendant to claim a deduction as against the plaintiff's demand. As explained in *Household Consumer Discount Company v. Vespaziani*, 490 Pa. 209, 415 A2d 689 (1980):

> [It] is a doctrine of intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced.

*Id.* at 694 (quoting *Pennsylvania R. Co. v. Miller*, 124 F.2d 160 (5th Cir.1942) *cert. denied* 316 U.S. 676, 62 S.Ct. 1047, 86 L.Ed. 1750.

As the doctrine relates to bankruptcy, our Circuit has described it thusly:

> Recoupment, on the other hand, allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be "setoff" under 11 U.S.C. § 553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation ...
> In bankruptcy, the recoupment doctrine has been applied primarily where the creditor's claim against the debtor and the debtor's claim against the creditor arise out of the same contract.

*Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984).

In the case at bar, Reinhardt's argument is fatally flawed. Initially, as previously stated, we have here only one side of a debtor/creditor relationship. No one disputes that the Debtor became indebted to Reinhardt's when it paid the policy premium on the Debtor's behalf. However, the Debtor is not Reinhardt's creditor—the refund to the Debtor was owed by the insurer, not by Reinhardt's.

■ Procedurally, recoupment is a defensive measure, not an independent cause of action. Reinhardt's, as the Plaintiff in this proceeding, has the right to bring its cause of action. To permit it to raise the defensive arm of recoupment would create an inequity which recoupment is designed to avoid.

It is clear to this Court that Reinhardt's is entitled to neither setoff, nor recoupment, and its Motion For Relief From Stay must, therefore, be denied.

We turn next to the arguments raised by the Trustee. The Trustee has challenged two separate funds which Reinhardt's presently possesses. Because of the factual differences surrounding these funds, we deal with each independently of the other.

■ Reinhardt's presently holds a check drawn by the insurer to the Debtor in the amount of $6,517.00. This check constitutes property of the Debtor's estate. Pursuant to Section 542(a) of the Bankruptcy Code:

> .... an entity, other than a custodian, in possession, custody or control, during the case, of property that the Trustee may use, sell, or lease under Section 363 of this title.... shall deliver to the Trustee, and account for such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

While the check in question is not of momentous proportions, neither can $6,517.00 be considered inconsequential.

Therefore, the Court will direct Reinhardt's to turn over the check to the Trustee of the estate.

■ The second fund involves a check in the amount of $4,796.00, similarly drawn by the insurer and made payable to the Debtor. This check, however, was endorsed over to Reinhardt's. The Trustee argues that said endorsement constituted an improper post-petition transaction under § 549(a), which states:

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) made after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or,

(B) that is not authorized under this title or by the Court.

Reinhardt's argues that pursuant to subsection (2)(B), the Debtor, while still operating as debtor-in-possession, endorsed the check over to Reinhardt's as part of its business operation, under §§ 1107 and 1108. This argument fails, as this claim is contradictory to Reinhardt's original pleading—it argues here that the money was received in order for it to continue the Debtor's insurance; but, its pleading averred that this money was used to reduce the pre-petition amount owed by the Debtor.

Reducing the amount of the pre-petition insurance debt is not the same type of transaction as purchasing insurance to cover the debtor-in-possession's operations. This is not what Congress intended when it sanctioned the debtor's continuation of its business operations.

Therefore, the endorsed check for $4,796.00 constituted a post-petition transaction avoidable by the Trustee, and pursuant to § 550, Reinhardt's will be directed to return said amount to the Trustee of the estate.

An appropriate Order will be issued.