RALPH BOCK AND LUCILE D. BOCK, APPELLANTS, V. BANK OF BELLEVUE, APPELLEE.

434 N.W.2d 310

Filed January 20, 1989.    Nos. 87-139, 87-146.

Kenneth Cobb, of Law Offices of Cobb & Hallinan, P.C., for appellants.

Gerald P. Laughlin and Jill Robb Ackerman, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, and Emmett D. Childers for appellee.

HASTINGS, C.J., GRANT, and FAHRNBRUCH, JJ., and HENDRIX and OLBERDING, D. JJ.

FAHRNBRUCH, J.

Ralph and Lucile D. Bock appeal a district judge's refusal to rescind, vacate, and set aside their personal guaranty and two deeds of trust given to the Bank of Bellevue at the request of their son to secure a $250,000 loan. The judge also refused to enjoin the sale, pursuant to the deeds of trust, of two Bock farm properties.

The trial judge's rulings were entered in separate equitable actions in Gage and Jefferson Counties, where the Bocks own farmland. The cases were consolidated for trial and for purposes of appeal. We affirm the trial judge in both cases.

Bocks' assignments of error number 16. Not all of the assigned errors were briefed or argued. Those errors assigned but not argued will not be considered. *Wells Fargo Ag Credit Corp. v. Batterman*, 229 Neb. 15, 424 N.W.2d 870 (1988); *In re Estate of West*, 226 Neb. 813, 415 N.W.2d 769 (1987). Consolidated, those assignments of error properly before this court claim the trial court erred in finding: (1) that Neb. Rev. Stat. § 40-104 (Reissue 1988) does not require that a guaranty be acknowledged; (2) that the guaranty and deeds of trust were supported by sufficient consideration; (3) that the bank did not have a duty to disclose the son's financial situation to the Bocks and that the bank did not coerce the Bocks through fraud, duress, or misrepresentations; and (4) that the appellants had the burden of proving their case by clear and convincing evidence.

On appeal to this court, an equity action is reviewed de novo on the record, subject to the rule that where the credible evidence is in conflict, the Supreme Court may consider the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Brown v. Borland, ante* p. 391, 432 N.W.2d 13 (1988). The fact that the trial court observed the witnesses and accepted one version of the facts over another is indeed important in these cases, if not crucial.

In the spring of 1983, the appellants' son LaVern Bock wanted to refinance his business indebtedness with a loan from the Bellevue bank. He also wanted computer equipment for his business, Photo Laboratory of Lincoln, Inc. (Photo Lab). LaVern was told by a Bellevue bank officer that he needed

additional collateral to secure the desired loan. In 1979, Ralph and Lucile Bock had mortgaged their farm so that LaVern could obtain a loan from First National Bank of Beatrice. At the time LaVern approached the Bellevue bank, the Beatrice bank loan was still unpaid. LaVern suggested to the Bellevue bank officer that his parents would provide the additional security it required to loan him money.

Unbeknown to his parents, LaVern submitted a financial statement to the Bellevue bank showing that Ralph and Lucile Bock owned 580 acres of farmland worth $940,000. A later appraisal of the Bock land for the bank by Wayne Kubert showed the Bocks owned about 480 acres of land worth $577,000. The guaranty and deeds of trust recite 320 acres.

LaVern testified that his father was aware an appraisal for the Bellevue bank was to be made and that he explained that the appraisal was being required by the bank. LaVern said he accompanied Kubert to the farm and introduced him to Ralph Bock. Kerby Cunningham, the elder Bocks' C.P.A., testified that he had been contacted by Ralph Bock regarding the lease-purchase of computer equipment by LaVern. The C.P.A. said Ralph was interested in the tax consequences of a lease-purchase of the computer equipment in his own name and its rental to Photo Lab. Cunningham recalled that Ralph had not yet agreed to help LaVern on the lease-purchase, but was favorable to the idea.

The loan was closed and the lease-purchase agreement finalized at the Bock farm home on November 22, 1983. The elder Bocks testified that LaVern called their home the morning of November 22 and told them he had papers for them to sign. Kyle Eichorn, an employee of Affiliated Midwest Bancs Leasing and the leasing officer in charge of LaVern's computer equipment lease, accompanied LaVern to the farm. Eichorn brought with him the papers for the loan from the Bellevue bank. Both Ralph and Lucile Bock claimed they knew nothing of the loan or the lease-purchase agreement until the morning the documents were executed.

The elder Bocks executed and delivered to the Bank of Bellevue a "Term Loan Agreement," a "Continuing Personal Guaranty," a "First Deed of Trust" to a quarter section of land

in Gage County, and a "First Deed of Trust" to a quarter section of land in Jefferson County, and in their own right executed a lease-purchase agreement for computer equipment.

The "Term Loan Agreement" provided that the Bellevue bank would loan $250,000 to Photo Lab, which was owned by LaVern Bock. Besides the elder Bocks, LaVern and his wife were to be guarantors. The "Continuing Personal Guaranty" guaranteed payment of the $250,000 loan upon default and provided it would be secured by the two deeds of trust to the elder Bocks' land. It was signed by the elder Bocks but was not notarized. Each of the elder Bocks signed each of the deeds of trust before a notary, who took their acknowledgments and notarized their signatures. Eichorn served as the notary.

Eichorn testified that each document was explained to Ralph and Lucile Bock and that they were given an opportunity to read the papers. Neither of them read any of the documents, although LaVern Bock testified that his parents "paged" through the papers. Eichorn said he told the Bocks they would have to make the payments or lose their farm if their son LaVern defaulted. Ralph Bock said he told Eichorn that he could not make the loan payments if LaVern did not. Lucile Bock testified that she was reluctant to sign the required documents. However, she wanted to do the right thing and help LaVern. Both parents testified they trusted LaVern.

Both Ralph and Lucile Bock testified Eichorn told them the loan was "safe" and would be paid off in the spring after he, Eichorn, sold condominiums owned by LaVern. Eichorn denied making any such statement. LaVern testified that it was he who told his parents the loan was safe and would be paid off shortly after the condominiums were sold. The Bocks claim they did not know that the condominiums were heavily mortgaged nor that their sale would not produce enough money to pay off the loan.

Both the elder Bocks testified they did not understand the potential of losing their farm. LaVern received the use of $84,000 in computer equipment and a $250,000 loan from the bank. He eventually defaulted on the loan. The Bank of Bellevue gave the elder Bocks notice of default and elected to sell the land described in the deeds of trust. Thereafter, the

Bocks filed their petitions in both the Gage and Jefferson County District Courts seeking relief from the documents they had signed.

The appellants argue, first, that the trial court erred in finding that the personal guaranty was valid and enforceable when it was not acknowledged. The elder Bocks now claim § 40-104 requires a guaranty be acknowledged. The trial court found the guaranty valid and enforceable, but in its rulings, the court made no mention of § 40-104. There is nothing in appellants' amended petitions challenging the validity of the personal guaranty for lack of any acknowledgment. Where an issue is not raised by the pleadings, it will not be addressed for the first time on appeal. See, *First Nat. Bank v. Rickel, Inc.*, 229 Neb. 478, 427 N.W.2d 777 (1988); *Aldridge v. School Dist. of North Platte*, 225 Neb. 580, 407 N.W.2d 495 (1987). Therefore, we decline to consider this issue. *Meyer v. Meyer*, 180 Neb. 379, 142 N.W.2d 922 (1966).

We next consider appellants' second assigned error that the court erred in finding that the guaranty and trust deeds were supported by sufficient consideration. In its opening paragraph, the guaranty states, "In consideration of the Bank of Bellevue at my request, giving or extenting [sic] terms of credit to PHOTO LABORATORY OF LINCOLN, INC., herein after called "Borrower", I(we) hereby give this Continuing Personal Guaranty to the said Bank of Bellevue . . . ." The appellants now claim that it was their intention to assist a failing business owned by their son LaVern and that the majority of the loan proceeds was not put to this use. The trial court found that Ralph and Lucile Bock intended to obtain credit for LaVern, not just one of his corporations. The court also found the record was not clear which of LaVern's businesses incurred the expenses paid with some of the loan proceeds.

There is sufficient consideration for a promise if there is any benefit to the promisor or any detriment to the promisee. *Kearney Centre Inv. v. Thomas*, 229 Neb. 21, 424 N.W.2d 620 (1988). The record is clear that $140,752.52 was paid for the benefit of Ralph and Lucile Bock or Photo Lab. Nearly half of that amount was used to pay off the mortgage on Ralph and

Lucile Bock's farm at the First National Bank of Beatrice. The remainder of that sum went directly to Photo Lab or paid for loan fees. LaVern testified an additional $65,000 of the loan money was paid on his condominiums and his home mortgage. The record is not clear as to whether Photo Lab or LaVern personally benefited from the rest of the loan proceeds.

However, there is no question the Bellevue bank, to its detriment, paid out all of the $250,000 it was obligated to loan and that all of the money was used for the benefit of either LaVern, his parents, or Photo Lab. That, alone, is sufficient consideration to satisfy the above-quoted rule from *Kearney Centre Inv.* Further, this court has stated that for there to be consideration for an agreement, "[t]he benefit rendered need not be to the party contracting but may be to anyone else at his [contracting party's] procurement or request." *Erftmier v. Eickhoff*, 210 Neb. 726, 733, 316 N.W.2d 754, 758 (1982). The testimony of both Ralph and Lucile Bock makes it clear that the parents intended to help their son. The now-claimed intent to benefit only Photo Lab lacks credibility. Moreover, it was Photo Lab, through LaVern Bock, its president and principal stockholder, that directed the Bank of Bellevue to name certain payees on the checks. On the cashier's checks, Photo Lab is shown as the remitter.

We find there was sufficient consideration for the personal guaranty and deeds of trust.

Appellants next argue that the trial court erred in failing to find the personal guaranty and deeds of trust were signed by Ralph and Lucile Bock as a result of duress and fraudulent misrepresentations by the Bellevue bank. They also assert that the bank had a duty to disclose details of LaVern's financial situation and to explain the nature of a deed of trust.

To constitute duress, there must be an application of such pressure or constraint that compels a person to go against that person's will and takes away that person's free agency, destroying the power of refusing to comply with the unjust demands of another. See *Haumont v. Security State Bank*, 220 Neb. 809, 374 N.W.2d 2 (1985). In *Haumont*, the trial court found that the father and mother of an adult son were induced to execute a guaranty agreement, note, and mortgage by threats

and fear of criminal punishment of their son. Here, there is no suggestion of a threat of criminal prosecution of LaVern Bock. Moreover, to be voidable because of duress, an agreement must not only be obtained by means of the pressure brought to bear, but the agreement itself must be unjust, unconscionable, or illegal. The essence of duress is the surrender to unlawful or unconscionable demands. It cannot be predicated upon demands which are lawful, or the threat to do that which the demanding party has a legal right to do. *Lustgarten v. Jones*, 220 Neb. 585, 371 N.W.2d 668 (1985).

Appellants apparently contend that alleged misrepresentations by the Bellevue bank, coupled with Ralph and Lucile Bocks' ages, education, and claimed lack of experience, constitute duress sufficient to void their personal guaranty and deeds of trust. The evidence is insufficient to show pressure or constraint placed upon the Bocks by the bank. Nor is the evidence sufficient to show that the guaranty and deeds of trust are unjust, unconscionable, or illegal. The elder Bocks were not novices at pledging their farm for their son's benefit. They had done it at least once before at the bank in Beatrice. Ralph Bock had sufficient business sense to contact his C.P.A. regarding tax consequences of the lease-purchase agreement and to place it in his own name for tax purposes. He had knowledge about the lease-purchase before he was contacted by Eichorn. Clearly, the Bocks were not victims of duress.

The appellants' claim of fraudulent misrepresentation is also without merit. To establish misrepresentation, the party alleging it must plead and prove that a representation was made; that the representation was false; that the representation was known to be false when made, or was made recklessly without knowledge of its truth and as a positive assertion; that it was made with the intention that the plaintiff should rely on it; that the plaintiff reasonably did so rely; and that the plaintiff suffered damage as a result. *Pawnee County Bank v. Droge*, 226 Neb. 314, 411 N.W.2d 324 (1987). See, also, *Edwin Bender & Sons v. Ericson Livestock Comm. Co.*, 228 Neb. 157, 421 N.W.2d 766 (1988). As will be discussed below, in an equity case a fraudulent misrepresentation must be proved by clear and

convincing evidence.

In their petitions to the district courts, the elder Bocks allege the following misrepresentations by the bank: (1) LaVern's or Photo Lab's ability to repay the loan; (2) the financial well-being of Photo Lab and of LaVern Bock; (3) the nature of the documents; (4) the use of the loan proceeds; and (5) characterization of the deeds of trust as liens on the Bocks' property.

In their brief and argument to this court, appellants also claim that Eichorn's alleged statement regarding the sale of LaVern's condominiums was a misrepresentation. As stated earlier, Eichorn denied saying anything to Ralph and Lucile Bock about selling the condominiums. It is LaVern who admitted telling his parents that proceeds from the sale of the condominiums would be applied to the loan. It is obvious that the trial court accepted Eichorn's version of the conversation concerning the sale of the condominiums. We give weight to the trial court's acceptance of Eichorn's version, that court having observed the witnesses.

The record is completely devoid of any statements by Bellevue bank representatives to Ralph and Lucile Bock regarding any person's or entity's ability to repay the loan, the financial well-being of Photo Lab or LaVern, or the nature of the documents. We agree with the findings of the trial court that the elder Bocks were well aware of the purpose of the loan transactions and that they desired to help their son. The parents had previously mortgaged their land and understood that the land was again being pledged to secure a loan to assist LaVern. They were told that the land would be subject to claim by the Bellevue bank if the loan was not repaid. Finally, Ralph and Lucile Bock were given, and refused, the opportunity to read the documents. One who signs an instrument without reading it, when he can read and has the opportunity to do so, cannot avoid the effect of his signature merely because he was not informed of the contents of the instrument. *Meek v. Gratzfeld*, 223 Neb. 306, 389 N.W.2d 300 (1986).

We find that the appellants have failed to prove, by clear and convincing evidence, that fraudulent representations were made by the defendant bank. We also find that the Bank of

Bellevue had no duty to disclose LaVern Bock's financial situation to his parents.

Where the surety makes no inquiry on the subject, the duty of disclosure as to facts increasing the risks of the undertaking depends upon the circumstances of the case. Generally, the creditor may assume that the surety has obtained information from other sources or has chosen to assume whatever risks may be involved. A duty of disclosure may arise when the creditor knows or has good grounds for believing (1) the surety is being deceived or misled or (2) the surety has been induced to enter the contract in ignorance of facts materially increasing his risks, of which the creditor has knowledge and the opportunity to disclose prior to the surety's acceptance of the undertaking. *Meek v. Gratzfeld, supra.* See, also, *Pawnee County Bank v. Droge, supra.*

There is no credible evidence that either Ralph or Lucile Bock asked for information regarding their son's financial condition. Appellants contend that the Bellevue bank had grounds for believing that the Bocks were being deceived or misled, giving rise to a duty to disclose without being asked. Specifically, the Bocks point to the Bellevue bank's knowledge (1) of the mortgage on LaVern's condominiums, (2) that Photo Lab had no profitable years behind it, (3) that Photo Lab did not have sufficient cash-flow to service the debt, and (4) of the discrepancy between the appraisal of the farmland and the Bocks' financial statement as filled out by LaVern.

The evidence shows that Photo Lab had made a small profit in 1981 and 1982 and was expected to show a profit of $70,000 to $80,000 in 1983. In addition to any profits, Photo Lab's cash-flow was increased by $50,593 in 1980, $60,590 in 1981, $73,582 in 1982, and $80,432 in 1983, due to depreciation. Robert Hawley, who recommended approval of the loan, testified that he believed Photo Lab would be able to make the loan payments. Hawley considered both the elder Bocks' financial statement and the Kubert appraisal, as well as LaVern Bock's other debts, in determining that the loan was bankable. By hindsight, it is easy to say that Hawley made a mistake when he recommended that the loan be approved. However, making what may be a poor business decision does not render data

relied upon so suspect as to require a bank to disclose data without being asked to do so. Further, the bank was entitled to rely upon Ralph and Lucile Bocks' prior experience with a mortgage and loan and their knowledge that their son needed financial assistance. The elder Bocks claimed naivete is not credible.

The circumstances surrounding the loan, guaranty, and deeds of trust do not take this situation out of the general rule that the creditor may assume that the surety has obtained information from other sources or has agreed to assume whatever risks may be involved. We find that the appellants' third assigned error has no merit.

Finally, appellants assign as error that the trial court required them to prove their fraudulent misrepresentation allegations by clear and convincing evidence. They contend that the proper standard should be preponderance of the evidence. Appellants recognize the longstanding rule that courts of law require proof of fraud by a preponderance of the evidence, while courts of equity require clear and convincing evidence. See *Tobin v. Flynn & Larsen Implement Co.*, 220 Neb. 259, 369 N.W.2d 96 (1985). However, they argue that there is no rational basis for placing a higher burden of proof on one who seeks equity rather than money damages at law.

In *Tobin v. Flynn & Larsen Implement Co., supra*, this court adhered to the burden of proof distinction in law and equity actions for fraud. We clearly stated that the burden of proof in fraud actions at law is by a preponderance of the evidence, while in equity it is by clear and convincing evidence. We see no reason to depart from those rules.

Taking into consideration that the trial judge had an opportunity to observe the witnesses, upon de novo review of the record, we find that none of appellants' assigned errors has merit. The orders of the district court are correct and should be affirmed.

AFFIRMED.